## City of Allentown Zoning Board of Adjustment v. Muhlenberg College

*James N. Diefenderfer*, Assistant City Solicitor, for plaintiff.

*William S. Hudders* and *F. Paul Laubner*, for defendant.

SATTERTHWAITE, P. J. (Seventh Judicial District, Specially Presiding), October 24, 1969.—This zoning case involves solely the interpretation, scope and application of ordinance provisions authorizing the use of land and buildings as an "educational institution."

Muhlenberg College has become the owner of a dwelling house and premises known as 320-26 North Twenty-second Street in the City of Allentown and has made appropriate application under the city's zoning ordinance to use the same, as to part of the first floor for college staff office space, and through the balance of the building for dormitory purposes to house 13 college students and one staff advisor. The zoning administrative officer refused to issue a permit, and the board of adjustment affirmed. The college's appeal to this court followed.

The matter has been submitted for decision on the record of the board of adjustment as enlarged by facts stipulated at a brief hearing before the undersigned, some of which undisputed facts were received over objections solely as to relevancy as interposed by the assistant city solicitor. Since the record has been amplified here, the matter must be disposed of in this appeal as a proceeding de novo: Rogalski v. Upper Chichester Township, 406 Pa. 550 (1962). However, no factual issues of any consequence are

presented, and the relevancy objections have become largely academic.

Premises 320-26 North Twenty-second Street are located in a residence "B" district under the classifications of the zoning ordinance. The property is situated on the west side of North Twenty-second Street, bounded on the south and west by other land already owned and used by the college, although properties to the north and on the opposite or east side of North Twenty-second Street are privately owned dwellings and apartments and the main college campus is located west of Twenty-third Street, two blocks to the west.

Uses permitted by the zoning ordinance as a matter of right in residence "B" districts, in addition to single, double and multiple family dwellings, include churches, public libraries, public or private schools or other religious, charitable or educational institutions, and public parks or playgrounds.

Accordingly, since there is no ordinance definition to the contrary, the terms "school" and "educational institution" must be understood to have been used in their broadest sense, being enabling or permissive in character, as contrasted with strictly-to-be-construed prohibitions or restrictions: Gilden Appeal, 406 Pa. 484 (1962). And under these circumstances, there can no longer be any question but that the concept of "educational" use extends to the collegiate level and is not confined to elementary or secondary schools: Delaware County Community College Appeal, 435 Pa. 264 (1969).

It follows, therefore, under the specific provisions of the Allentown ordinance, that Muhlenberg College, a long-established and highly regarded institution of higher learning, would be authorized, as a matter of right, generally to carry on in residence "B" districts all of its activities reasonably necessary and proper

to effectuate its academic functions. How far removed from purely classroom and laboratory purposes the "educational" concept should be regarded as extending in this connection need not now be determined. Suffice it to hold for present purposes, that dormitories for housing students in residence to avail of the college curriculum are clearly within the broadly construed sense of an educational institution. Compare Western Theological Seminary v. City of Evanston, 325 Ill. 511, 156 N. E. 778 (1927). The mere absence of any mention of dormitories as expressly included in the list of permissible educational uses, such as had been spelled out by the ordinance under consideration in Temple University v. Zoning Board of Adjustment, 414 Pa. 191 (1964), for example, does not justify the conclusion drawn by the board of adjustment in this case that they are, therefore, necessarily excluded.

The board's further ground of decision, however, and the only real position taken on the merits by the city in this appeal, is that, conceding Muhlenberg's right to all reasonably college-related uses within the boundaries of what the city authorities have heretofore regarded as its established campus, nevertheless, such educational occupancies should not extend beyond those existing limits and encroach, particularly as isolated pockets, into other areas. For this proposition, neither ordinance provision nor other precedent is cited, and, indeed, the argued "island" nature of the use under consideration is unfounded in fact, as already hereinabove indicated.

The diligence of counsel and of the court has not disclosed any Pennsylvania authority directly involving the question of whether, in the instant zoning context, an ancillary or collateral use, such as that of a dormitory, must immediately adjoin and be a part of the same lot or parcel on which the principal

pedagogic function of the educational institution is being carried out, in order to attain the privileged status of the latter. There is, however, a Connecticut appellate court decision squarely on point. In State of Connecticut v. Laurel Crest Academy, 2 Conn. Cir. 294, 198 A. 2d 229 (1963), the factual situation was not dissimilar to that presented in the instant case, in that occupancy of a converted one-family house, located off and physically separate from the main campus and used as a domitory for 12 students and one faculty member, was held to constitute a use directly permitted as a school, and was not precluded as amounting merely to an accessory use which, under the applicable ordinance, would have been permissible only on the same tract as the principal school grounds.

Analogous decisions in Pennsylvania concerning the scope and extent of an educational institution's exemption from local real estate taxation point to the same result. Thus, in University of Pittsburgh Tax Exemption Case, 407 Pa. 416 (1962) (chancellor's residence), and Lancaster Theological Seminary Tax Exemption Case, 207 Pa. Superior Ct. 12 (1965) (faculty homes), off-campus, and even isolated, separate and subsidiary facilities, otherwise qualifying, were held to be properly includible within the respective institutions' general exempt status, and were not disqualified merely because of lack of physical contiguity. So, too, in the instant case, the use of the subject property, generically and substantively qualifying as a reasonably necessary and proper component element of an educational institution, should not be denied recognition as such merely because it represents a not-prohibited natural expansion of or, arguably, is somewhat removed from, the main body of the preexisting college plant.

One final matter requires mention. The assistant

city solicitor, possibly in anticipation of this result under the existing ordinance, has suggested in his brief that this court follow the precedent established by Judge Knight, of Montgomery County, in Hood v. Upper Dublin Township, 13 D. & C. 2d 596 (1957), by remanding the proceedings to the board of adjustment for reconsideration as a special exception case and the board's possible imposition of regulatory conditions upon its grant of the requested use permit. That action was taken in the Montgomery County case cited because the applicable ordinance, originally authorizing the subject educational use as a matter of right, had been amended as of the day prior to the zoning board's decision, to permit such a use only as a special exception. So, too, in this case, it is argued that a revised zoning ordinance of the City of Allentown would reallocate to the special exception category all school and educational institutional uses, with elaborate and comprehensive standards to determine the grant or refusal thereof in particular cases.

The obvious difficulty with this position in these proceedings, however, is that, unlike the situation in Hood, supra, the revised ordinance had not actually been enacted at the time of the hearing before the board herein, but was, and even now still is, in the preliminary or proposed-legislation stage. Accordingly, and regardless of any of the other problems incident to the retroactive application of amended zoning ordinances to pending cases, no consideration whatsoever may be given to these merely proposed revisions. Compare Caldwell v. Northampton Township Zoning Board of Adjustment, 18 Bucks 573 (1968).

## FINAL ORDER

And now, October 24, 1969, for the reasons stated in the foregoing opinion, the within appeal of Muhlenberg College is hereby sustained, the decision of the

zoning board of adjustment is hereby reversed, and the record is hereby remanded to that board with directions that a zoning permit be duly issued in accordance herewith. Costs to be paid by the City of Allentown.