## GREATON PROPERTIES, INC.

v.

## LOWER MERION TOWNSHIP.

Appeal of Mark Friedman, Celia Reisman, Viktoria M. Possoff, MD, Abraham Possoff, DDS, Max Mendel III, Stuart J. Cohen, Jacquelyn Cohen, Barbara D. Schraeder, Paul L. Schraeder, D. Jeffery Hartzell, M.D., Ann S. Hartzell, Frank Fox, Anne Fox, Meru Thakur, Anita Thakur, MD, Kathy C. Mandelbaum, David G. Mandelbaum, Anthony P. Green, Mary Coyne, Jerome L. Kolker, Irene S. Kolker, Jeanne Murray Walker, E. Daniel Larkin, Carol H. Lavoritano, Joseph E. Lavoritano, Arthur A. De Costa, Charlotte B. De Costa, Deborah G. Stinnett, Frederick Schwartz, Leona Schwartz, John R. Wagner, Renee Keating Wagner, John R. Senior, MD, Sarah Spedden Senior, Jerry Alan Jacobs, Sharon Jacobs, Ernest A. Allen, Lavida R. Allen, Gary Michael Flaxenburg, MD, Judith Flaxenburg, Adele Kaehler, Victor Kaehler, Norman A. Felsenthal, Helen M. Felsenthal, Richard S. Kennedy, Ella D. Kennedy.

Greaton Properties and Lower Merion Township

v.

Zoning Hearing Board of Lower Merion Township.

Appeal of Lower Merion Township.

Appeal of Greaton Properties, Inc., From the Decision of the Zoning Hearing Board of Lower Merion Township.

Appeal of Lower Merion Township From the Decision of the Zoning Hearing Board of Lower Merion Township.

Appeal of Anne Fox, Francis Fox, Celia Reisman, Mark Friedman, Renee Wagner, John Wagner From the Decision of the Zoning Hearing Board of Lower Merion Township.

Appeal of Merion Civic Association From the Decision of the Zoning Hearing Board of Lower Merion Township.

Appeal of Merion Civic Association.

Commonwealth Court of Pennsylvania.

Argued March 13, 2002.
Decided April 23, 2002.

Jan Z. Krasnowiecki, Philadelphia, for appellant.

Gilbert P. High, Jr., Norristown, for appellee, Lower Merion Township.

Sean P. Flynn, Norristown, for appellee, Lower Merion Township Zoning Hearing Board.

BEFORE: LEADBETTER, J., SIMPSON, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Judge SIMPSON.

Mark Friedman and other neighboring residents (Individual Neighbors), Lower Merion Township (Township) and the Merion Civic Association (collectively Objectors) appeal orders affirming the decision of the Lower Merion Township Zoning Hearing Board (Board) granting a special exception to permit conversion of an existing apartment building into a dormitory for university students.

Greaton Properties, Inc. (Applicant), a wholly owned subsidiary of St. Joseph's University (University), owns 5.6 acres in Lower Merion Township (Property). The Property is zoned R 7 Residential, which permits multi-family use, and is currently improved with a 108-unit apartment building. Applicant's proposal will alter the existing apartment building to accommodate 220 University students. The Property is bordered by: St. Charles Seminary, a private educational institution with student and faculty housing; Wynnewood Hall, a University student residence hall; and the "Main Line" of the old Pennsylvania Railroad. One side of the Property abuts a single-family residential area.

In accordance with the Lower Merion Township Zoning Code (Code), Applicant submitted an application to the Board seeking a special exception as a private educational institution. The Board, with

only two members present, held a hearing, after which the hearing officer concluded that the proposed use qualified as a "private educational institution." The other Board member disagreed, concluding that the proposed use qualified as a "student home." Applicant's special exception request was deemed denied as a result of the Board members' inability to decide this issue. Applicant appealed to the Court of Common Pleas of Montgomery County (trial court). Individual Neighbors filed a petition to intervene in that appeal.

On June 4, 1999, trial court issued an order denying the petition to intervene of Individual Neighbors and of the Merion Neighbors Association on the basis of standing. On October 13, 1999, the trial court entered an order concluding that the proposed dormitory was a "private educational institution." The trial court remanded the matter to the Board to determine if Applicant met the remaining elements for a special exception.

On January 24 and 31, 2000, with a full complement present, the Board held two remand hearings. Objectors presented expert testimony by Ronald Turner, a specialist in land planning and architecture. Mr. Turner noted the vast differences between the lifestyles of college students and typical non-transient residents. He testified that college students tend to function on an unusual schedule, create excess noise and cause major parking problems.

To explain why off-campus dormitories have a negative impact on the community, Mr. Turner compared the effects of a decentralized campus (with satellite buildings throughout a community) with the effects of a centralized campus (one with defined boundaries in the community). He opined that a remote dormitory would lead to commercial development along walkways, paths and streets between the dormitory and the main campus, ultimately creating an expanded college area. In addition to this testimony, Objectors offered the testimony of a real estate appraiser. This witness, however, could not definitively opine that the proposed dormitory would result in a decrease in neighborhood property values.

Applicant presented testimony by a land-planning expert, who opined that the proposed use would not have an adverse impact on public health, safety or welfare. The expert based his opinion on the limited number of residences immediately adjacent to the proposed dormitory, the setback of the building, the University's proposed security system and the likely path of travel for students. After considering all of the testimony, the Board concluded that Applicant's proposal satisfied all of the elements required to obtain a special exception.

The Board granted the special exception subject to several conditions.[1] The trial

1. The Board granted the special exception subject to the following conditions:
   a. St. Joseph's University will operate the residence hall on the property applying the University's standards for its college-operated dormitories.
   b. Applicant and St. Joseph's University will provide security and supervision for the Property described in the testimony at the hearings on this matter:
      (1) 10 resident assistants,
      (2) 24–hour security desk manned by a security officer,

     (3) Security officer on foot patrol during reasonable intervals at night.
     (4) Bike patrols twice an hour,
     (5) Inspections once an hour by a security supervisor.
   c. Applicant will install 176 parking spaces shown on the "reserve parking plan" Exhibit A 8. No parking will be provided in the front of the building.
   d. St. Joseph's University will operate shuttle bus service for the Property at reasonable intervals, operating from 7:30 a.m. until midnight on weekdays

court affirmed the Board's decision on December 14, 2000. On January 22, 2001, after an *en banc* hearing, the trial court entered an order again denying Objector's appeal and affirming the Board's decision. On September 7, 2001, an *en banc* panel of the trial court issued an opinion affirming its orders of October 13, 1999 and January 22, 2001.

On appeal, Individual Neighbors and the Merion Civic Association challenge the orders of June 4, 1999, October 13, 1999 and January 22, 2001. The Township appeals the orders of June 4, 1999, October 13, 1999 and December 14, 2000.[2]

## I.

■ Objectors first contend that the trial court erred when it held the proposed dormitory qualifies for a special exception as a "private educational institution."[3] Objectors assert that prior cases which permitted college dormitories by special exception are distinguishable. Alternatively, they argue that the proposed use should be classified as a "student home."

■ In the absence of any definition to the contrary in a zoning ordinance, the term "educational institution" must be interpreted in its broadest, most permissive sense. *Gilden Appeal*, 406 Pa. 484, 178

A.2d 562 (1962) (school for handicapped and exceptional children satisfied the undefined term "educational institution" for purposes of special exception).

Our decision in *Dale v. Zoning Hearing Board of Tredyffrin Township*, 91 Pa. Cmwlth. 220, 496 A.2d 1321 (1985) is instructive. In *Dale*, Cabrini College sought a special exception to allow construction of three dormitories in a residential district of a neighboring township. The residential district permitted educational uses by special exception. This Court interpreted the undefined term "educational use" broadly as encompassing all activities reasonably necessary to properly effectuate a college's academic functions. Therefore, we concluded that dormitories are an educational use and upheld the grant of the special exception. As no prior cases at the appellate level had addressed the issue of whether a dormitory fell within the definition of an educational use, we relied on *Board of Adjustment v. Muhlenberg College*, 48 Pa. D. & C.2d 489 (C.P. Lehigh 1969) to support this conclusion.

In *Muhlenberg*, the college sought a permit to convert an existing dwelling into an off-campus dormitory two blocks away from the main campus. This required the court in *Muhlenberg* to construe an ordi-

and until 3:00 a.m. on weekends. The shuttle bus will stop on the Property every twenty to thirty minutes. Buses will enter and exit the Property from City Line Avenue or Sixty Third Street and that entrance will be redesigned to facilitate the necessary turns. There will be no shuttle bus to or access from Wynnewood Road.

e. No vehicles will enter or exit the Property from Wynnewood Road unless such access is required by the township in the course of land development plan review.

f. Applicant will install a forty-foot planted buffer along the entire northern perimeter of the Property, the design of which

shall be approved with the required Land Development Plan review.

g. The two lots that make up the property shall be merged.

2. Because no additional evidence has been presented since the Board's decision, our review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law in granting the variances. *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh*, 547 Pa. 163, 689 A.2d 225 (1997).

3. Section 155–11(S)(3) of the Code permits a "private educational institution" by special exception, but does not define the term.

nance that authorized "educational institutions" in a residential district. The court began its analysis by determining that the ordinance was permissive in nature and therefore subject to broad interpretation. The court held that "dormitories for housing students in residence to avail of the college curriculum are clearly within the broadly construed sense of an *educational institution*" (emphasis added). *Id.* at 492.

When confronted with factually similar situations, jurisdictions outside of Pennsylvania have reached the same result. *See State of Connecticut v. Laurel Crest Academy*, 2 Conn.Cir.Ct. 294, 198 A.2d 229 (1963) (preparatory school's dormitory has an educational purpose and satisfies the undefined term "schools" for purposes of a zoning ordinance); *Schueller v. Board of Adjustment of City of Dubuque*, 250 Iowa 706, 95 N.W.2d 731 (Iowa 1959) (dormitory for married students qualifies as an educational use within a zoning ordinance permitting educational uses in a residential district); *Western Theological Seminary v. City of Evanston*, 325 Ill. 511, 156 N.E. 778 (1927) (college dormitories permitted to be constructed in a residential district, which allowed "college buildings").

Based on the foregoing authority, we conclude that the University's proposed dormitory satisfies the Code's undefined term "private educational institution." University dormitories are universally equipped with bookshelves, desks, and chairs, and as such, provide students with a place to study as well as sleep. *Dale.*

■ Objectors further contend that the proposed dormitory falls under the Code's definition of a "student home" because the dormitory is a collection of student homes. In support, Objectors invoke the doctrine of statutory construction that where there are two provisions, one general and one specific, the more specific of the two controls. Here, Objectors argue the "student home" provision is more specific and therefore prevails over the undefined "private educational institution" provision. The doctrine, however, is not applicable here.

A student home is defined under Section 155–95 of the Code as a:

> [l]iving arrangement for students, unrelated by blood, marriage or legal adoption, attending or about to attend a college or university or who are on a semester or summer break from studies at a college or university, or any combination of such persons. Student homes shall not include fraternities, sororities or community residential programs.

Student homes are permitted by special exception pursuant to Section 155–11(S)(5) of the Code. That section permits a student home for no more than three students located in a dwelling with a floor area of at least 1,500 square feet. The term "dwelling" is defined as a building designed for and occupied exclusively for residential purposes. Code § 155–4. It is apparent from the sub-definitions[4] under the defini-

---

4. Code Section 155–4 sets forth the following types of dwellings:

(1) ATTACHED DWELLING—A building which has two party walls in common with adjacent buildings.

(2) SINGLE FAMILY DETACHED DWELLING—A building designed for and occupied exclusively as a residence for only one family and having no party wall in common with an adjacent building.

(3) SINGLE FAMILY SEMI–DETACHED DWELLING—A building designed for and occupied exclusively as a residence for only one family and having a party wall in common with an adjacent building.

(4) TWO–FAMILY DETACHED DWELLING—A building designed for and occupied exclusively as a residence for two families, with one family living wholly or partly over the other and having no

tion of the term "dwelling" that the term only includes one- and two-family dwellings and does not include apartment buildings.

The student home provisions are not applicable to the proposed dormitory. Those provisions were enacted to prevent the conversion of one- and two-family dwellings into student homes. Furthermore, the Code defines the term "dwelling" as a building designed exclusively for residential purposes. A University dormitory is not exclusively residential; it is an integral part of the overall educational experience. Because a careful reading of the Code provisions convinces us that the student home provisions do not apply to the application here, we need not resort to the statutory construction urged.

## II.

██ Objectors next assert that the spacing provision of § 155–11(T) of the Code prohibits a residence hall on the property. That section provides in pertinent part:

No residential use authorized under Subsection Q, R or S above shall be permitted if any other residential use listed in those subsections or any nonconforming use is located in any residential district except R–7 and within 500 feet, measured by the shortest distance between the lot on which the proposed use will be located and the lot or lots which contain the existing use. Family day care shall be considered a residential use. Student homes shall also be subject to the spacing provisions of § 155–141.3.

Based on this language, Objectors contend that the proposed dormitory should be prohibited because it is a residential use

and it lies within 500 feet of a non-conforming use. The Code does not define the term "residential use." The trial court concluded that a "private educational institution" is not a residential use. We agree.

Relying on *Camp Ramah in the Poconos, Inc. v. Zoning Hearing Board of Worcester Township,* 743 A.2d 1019 (Pa. Cmwlth.2000), Objectors contend we should look to the use of the property rather than the ownership to determine which of two possible zoning provisions apply. In *Camp Ramah,* a summer day camp, devoted to providing children with religious and recreational activities, sought a special exception as either a religious use or recreational use. The zoning hearing board found that the camp qualified as a recreational use because the daily activities performed by the children were primarily recreational. The issue before this Court was whether the camp qualified as a religious use or a recreational use for purposes of determining the appropriate setback requirements. On appeal, we affirmed the board's findings that the camp was a recreational use because the daily activities performed by the children were the same as any other camp.

Here, unlike *Camp Ramah,* Applicant sought Board approval on the grounds that the proposed dormitory qualified as a "private educational institution." Applicant never argued, in the alternative, that the dormitory could qualify as a. residential use. We have already determined that the dormitory qualifies as a "private educational institution." Consequently, we reject the argument that it could also be considered a residential use.

This case is most like our decision in *Friedlander v. Zoning Hearing Board,* 119

party wall in common with an adjacent building.

(5) TWO–FAMILY SEMI–DETACHED DWELLING—A building designed for and occupied exclusively as a residence

for two families, with one family living wholly or partly over the other, and having a party wall in common with an adjacent building.

Pa.Cmwlth. 164, 546 A.2d 755 (1988). In *Friedlander,* the Robert Packer Hospital proposed hospital administrative offices on parcels of land separate from other hospital facilities. Two of the parcels were within a zoning district that permitted hospitals by "special use," but did not permit office use. The landowner opposing the plan argued that the proposal should be prohibited because the proposed offices were office use, not hospital use. We rejected this argument stating, "we need say no more than the trial court in this regard. Hospital offices are just as much a hospital as patient rooms." *Friedlander,* 546 A.2d at 757.

The reasoning utilized by this Court in *Friedlander* is helpful. Similar to the proposed remote offices in *Friedlander,* the proposed dormitory is an integral part of the University. The dormitory qualifies as a "private educational institution," not a residential use and as such it is not subject to the spacing provisions required by Code Section 155–11(T).

### III.

■ Individual Neighbors contend that the trial court erred by denying their petition to intervene. At the time intervention was sought, the only issue presented was whether the proposed dormitory constituted a "private educational institution." This is purely a question of law. *See Southco, Inc. v. Concord Township,* 552 Pa. 66, 713 A.2d 607 (1998). The trial court denied the petition on the grounds that the Individual Neighbors lacked standing as the issue did not concern the public health, safety and welfare.

Individual Neighbors appealed that decision to this Court. We granted the petition to intervene, but then granted Applicant's motion to quash that appeal because the trial court remanded the case to the Board for further hearings. Individual Neighbors now claim that the trial court erred in failing to hold a hearing on intervention. Individual Neighbors, however, make no offer to prove how denial of their petition resulted in harm or what they would have proved at a hearing. Individual Neighbors fully briefed and argued the legal issue before this Court. Because no factual issues relating to intervention are raised and because Individual Neighbors participated in review of the legal issue, we discern no reversible error in the trial court's decision. *See, e.g., Commonwealth ex rel. Duff v. McCloskey,* 353 Pa. 553, 46 A.2d 178 (1946) (appellant who appeared amicus curiae, argued the case on its merits and furnished a brief was not harmed by a denial of its petition to intervene where only pure questions of law were involved).

### IV.

■ Objectors also contend that, contrary to the Board's findings, the proposed dormitory would have an adverse impact on the community so as to justify denial of Applicant's special exception request. In particular, Objectors argue that the Board utilized the wrong test for evaluating whether the proposed dormitory would have an adverse impact on the community, and that the Board improperly shifted the burden of proof. We disagree.

■ A special exception is not an exception to a zoning ordinance, but rather a use, which is expressly permitted, absent a showing of a detrimental effect on the community. *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board,* 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991). The applicant for the proposed use has both the duty to present evidence and the burden of persuading the board that the proposed use satisfies the objective requirements of the ordinance for the grant of a special exception. Once the applicant meets these burdens, a presump-

tion arises that the use is consistent with the health, safety and general welfare of the community. The burden then normally shifts to the objectors of the application to present evidence and persuade the Board that the proposed use will have a generally detrimental effect. Where, as here, however, the ordinance specifically places the burden on the applicant to show that the proposed use will not have a detrimental effect, the applicant only retains the burden of persuasion. Objectors still retain the initial presentation burden with respect to the general matter of the detriment to health safety, and general welfare.[5] *Manor Healthcare.* The evidence presented by objectors must show a high probability that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a substantial threat to the health and safety of the community. *Id.*

After reviewing all of the testimony, the Board concluded that granting the special exception would not be contrary to the public interest nor would it adversely affect the public health, safety or welfare. In support, the Board noted that the dormitory would be bordered on three sides by uses that would not be adversely affected by it. In addition, the only side that abuts a single-family residential area contains enough space to permit Applicant to provide a substantial buffer. Student traffic to and from the main campus would be

along City Line Avenue, a heavily traveled highway, which does not interfere with the residential area. The Board concluded that the dormitory's location, coupled with the University's undertaking to provide shuttle buses for student travel and security officers to prevent misconduct, would greatly limit the negative impact on the community. Therefore, based on the location, the Board found that the effects of the dormitory on the surrounding area would be no different than if it were located on the University's main campus. Objectors presented little evidence to meet their shifted burden of proving that the dormitory would be detrimental to the health and safety of the community. In fact, the only testimony concerning adverse impacts on the community concerned student housing in residences not owned by the University. The trial court determined that the Board's findings were based on substantial evidence. We agree.[6]

Accordingly, we affirm the trial court's decision.

### ORDER

AND NOW, this 23rd day of April, 2002, the order of the Court of Common Pleas of Montgomery County is hereby affirmed.

---

**5.** Section 155–114 of the Township's Code provides that:

   A. An applicant for a special exception shall have the burden of establishing both:

      (1) That his application falls within the provisions of this chapter which accords to the applicant the right to seek a special exception; and

      (2) *The allowance of the special exception will not be contrary to the public interest* (emphasis added).

**6.** Individual Neighbors also assert that the trial court failed to consider Article I, Section 27 of the Pennsylvania Constitution. The (en-

vironmental rights) amendment provides "[t]he people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment ....." Individual Neighbors assert that the amendment is applicable because of the implications that the decision has for suburban sprawl. However, they put forth no evidence to support this theory. The trial court rejected this argument because it is based on speculation and conjecture. We agree. There is no evidence of record to support this theory.