IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| G. Morris Solar, LLC | : | |
| | : | |
| v. | : | No. 1380 C.D. 2023 |
| | : | Argued: December 9, 2024 |
| Borough Council of the | : | |
| Borough of Gratz, | : | |
| | : | |
| Appellant | : | |

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                        FILED:  March 14, 2025

In this land use appeal, the Borough Council (Borough Council) of the Borough of Gratz (Borough) appeals from the October 24, 2023 order of the Dauphin County Court of Common Pleas (trial court) reversing Borough Council's Decision denying G. Morris Solar, LLC's (Applicant) conditional use application (Application) for a large solar energy development (Solar Project) and approving the Application.  Borough Council contends that the trial court erred and abused its discretion by not allowing Borough Council to supplement its Decision with findings of fact and conclusions of law and by reversing Borough Council's Decision where the Solar Project use is not harmonious with neighboring residential uses and would

impair property values, and where Applicant failed to meet objective standards of the Borough's Zoning Ordinance (Ordinance).[1] Upon review, we affirm.

## I. Background

On April 28, 2022, Applicant submitted its Application to develop the Solar Project across portions of six parcels of land (collectively, the Properties)[2] located in the Borough. Applicant is the lessee of the Properties under lease agreements with the owners. The Properties comprise approximately 180 acres of vacant land. The Properties are predominantly located in the Borough's C-1 Conservation District (C-1 District), but a portion of one parcel is located in the Borough's R-1 Single-Family Residential District (R-1 District). Specifically, Tax Parcel No. 27-001-016, referred to as Parcel 5, is split-zoned and located in both the R-1 and C-1 Districts. Under Section 503 of the Ordinance, "major solar energy systems" are permitted in the C-1 District by conditional use subject to supplemental regulations. Ordinance, §503; *see* Ordinance, §601. The use is not permitted in the R-1 District or in any other zoning district. As to split-zoned parcels, if at least 80% of the land area of a parcel is located within a particular zoning district, Section 305 of the Ordinance construes the entire parcel as being located in that district for zoning purposes. Ordinance, §305. The Borough's Zoning Officer denied the Application. Applicant appealed to Borough Council.

Shortly after Applicant filed the Application, Borough Council adopted a zoning amendment known as "Ordinance No. 050222" (Amendment) to modify

---

[1] Borough of Gratz, Pennsylvania, Zoning Ordinance, May 16, 2019.

[2] The Properties are identified as Dauphin County Tax Parcel Nos. 27-001-001, 27-001-002, 27-001-007, 27-001-012, 27-001-016, and 27-006-001.

2

the regulation of major solar energy systems, which had the potential to impede Applicant's Solar Project. In separate litigation, Applicant challenged the procedural validity of the Amendment with the trial court. By order dated August 31, 2022, the trial court ruled that the Amendment was void *ab initio* for failure to strictly adhere to the procedural requirements for adoptions. Borough Council appealed to this Court, which affirmed. *See Borough Council of the Borough of Gratz v. G. Morris Solar, LLC* (Pa. Cmwlth., No. 1049 C.D. 2022, filed October 13, 2023), *appeal denied*, 318 A.3d 96 (Pa. 2024).

Meanwhile, on June 23, 2022, Borough Council held a public hearing on the Application. Applicant presented documentary evidence, including aerial exhibits depicting the Properties, and the testimony of four expert witnesses:

(1)     Forrest Cauldren (Project Manager) of Pine Gate Renewables, LLC, a development manager for solar projects, testified on the Properties' characteristics and the purpose and operations of the Solar Project;

(2)     Paul Hughes, P.E., a civil engineer, testified to the civil engineering design of the Solar Project and compliance with the Ordinance's requirements;

(3)     Andrew Petersohn, P.E., a radio frequency design engineer, testified as to whether the Solar Project would cause radio frequency interference with neighboring properties; and

(4)     Mark Pomykacz (Appraiser), a licensed appraiser, testified regarding the property value impact analysis and whether the proposed use would cause a negative impact on adjacent or nearby properties.

Several members of the public appeared at the hearing and testified in opposition to the Application (Objectors). Objectors did not offer any expert testimony. At the conclusion of the hearing, Borough Council voted to deny the Application.

On June 30, 2022, Borough Council issued a written Decision denying the Application, citing five reasons for the denial:

3

- Failure of [] Applicant to address and comply with [Section] 602(56)B of [the Amendment] and its subsections.[3]

*  *  *  *

- Failure to show that 80% of the [l]ot area of [P]arcel 5 on the plan is in the C-1 District.

-Failure to adequately address emergency services.

-The relationship of the use and other uses in the vicinity, specifically residential uses, is not harmonious.

-The value of the adjacent properties, including value based in aesthetic views and appearance, will be impaired.

Borough Council Decision, 6/30/22, at 1-2. The Decision did not contain findings of fact, credibility determinations, or conclusions of law. In the Decision, Borough Council "reserve[d] the right to amend and supplement its Decision with full Findings of Fact and Conclusions of Law if an Appeal [was] taken from this Decision and once the transcript of the hearing [was] complete." *Id*. at 2.

Applicant filed a timely appeal with the trial court. On August 25, 2022, Borough Council filed the certified record, which included the hearing transcript. Applicant filed its brief on October 24, 2022; Borough Council filed its brief on January 10, 2023, in which it relied heavily on the Amendment. The trial court did not take additional evidence. On March 3, 2023, the trial court held oral argument. On March 28, 2023, Borough Council filed a motion to supplement the certified record to allow it to make findings of fact and conclusions of law. The trial court denied the motion and ruled that it would make its own findings of fact and

---

[3] Borough Council's Decision preceded the trial court's determination that the Amendment was void *ab initio*.

4

conclusions of law based on the certified record. The trial court allowed the parties to submit proposed findings of fact and conclusions of law, which it considered.

By order dated October 24, 2023, the trial court reversed Borough Council's Decision upon determining that the denial of the Application constituted an error of law and an abuse of discretion. In the accompanying opinion, the trial court issued its own findings of fact, credibility determinations, and conclusions of law. The trial court credited the testimony of Applicant's expert witnesses. The trial court found that the Amendment did not apply because it was rendered void *ab initio* by the courts. *See G. Morris Solar*. The trial court found that the proposed use is permitted as a conditional use under the Ordinance. This allowance evidences a legislative determination that this type of use is presumptively harmonious with the zoning plan and consistent with the public health, safety, and welfare of the community. The trial court found that Applicant satisfied the objective criteria for conditional use. Objectors failed to demonstrate that there is a high degree of probability that the Solar Project will cause substantial harm that is not normally associated with solar energy developments. Relying on Appraiser's testimony, which was not rebutted by expert testimony, the trial court found that the Solar Project will not impair adjacent property values. The trial court further found that Applicant demonstrated that 80% of Parcel 5 is located in the C-1 District, which was not rebutted. As for the emergency response plan, the trial court found that Applicant will work with the Borough Emergency Management Coordinator to create an acceptable plan for the Solar Project, which is required prior to the issuance of a zoning permit. Trial Court Opinion, 10/24/23, Findings of Fact (F.F.) Nos. 13, 43, 44, 48, 56-57, 65. Based on these findings, the trial court concluded that there

5

was no basis for Borough Council to deny the Application and reversed. This appeal now follows.[4]

## II. Issues

Borough Council raises five issues for our review. First, Borough Council contends that the trial court erred or abused its discretion by not allowing Borough Council to supplement the certified record with its own findings of fact and conclusions of law. Second, Borough Council contends that the trial court erred or abused its discretion by finding that the proposed use is harmonious with other uses in the vicinity, specifically residential uses. Third, substantial evidence does not support the trial court's finding that the Solar Project will not negatively impair the value of the adjacent properties, including value based in aesthetic views and appearance. Fourth, substantial evidence does not support the trial court's finding that 80% of the lot area of Parcel 5 on the zoning plan is in the C-1 District. Finally, Borough Council argues that Applicant failed to adequately address emergency services.[5]

---

[4] "In a case where the trial court takes no additional evidence, but makes its own findings based on the record before the board, we review the trial court's decision." *Brookview Solar I, LLC v. Mount Joy Township Board of Supervisors*, 305 A.3d 1222, 1232 n.14 (Pa. Cmwlth. 2023). Our review is limited to whether the trial court committed an abuse of discretion or an error of law. *Id*. "We may conclude that the trial court abused its discretion only if its findings were not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)).

[5] The issues have been reorganized for ease of discussion. We first address the issue of whether the trial court erred by denying Borough Council's motion to supplement the record because this issue impacts the rest.

6

### III. Discussion
#### A. Motion to Supplement the Record

First, Borough Council contends that the trial court erred or abused its discretion by denying Borough Council's motion to supplement the record so that Borough Council could submit its own findings of fact, credibility determinations, and conclusions of law in support of its Decision. Instead, the trial court substituted its own findings and conclusions. Borough Council recognizes that where a governing body does not issue findings of fact, the trial court may make its own findings or may order a remand for findings to be made. Borough Council contends that, so long as a decision is filed within 45 days, the Pennsylvania Municipalities Planning Code (MPC)[6] does not place a time limit on when supporting findings of fact and conclusions of law may be added. According to Borough Council, the trial court should have remanded the matter to Borough Council to make those findings.

Section 908(9) of the MPC requires the governing body to issue a written determination within 45 days of the last hearing. 53 P.S. §10908(9). It further provides:

> Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor.

*Id*.

However, where the governing body's decision does not include findings and conclusions, Section 1005-A of the MPC[7] requires the trial court to make them. *Brookview Solar I, LLC v. Mount Joy Township Board of Supervisors*,

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

[7] Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11005-A.

7

305 A.3d 1222, 1234 (Pa. Cmwlth. 2023). Specifically, Section 1005-A of the MPC provides:

> If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. *If the record does not include findings of fact* or if additional evidence is taken by the court or by a referee, *the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any*.

53 P.S. §11005-A (emphasis added).

Notwithstanding this statutory language, Borough Council relies on case law in support of its remand request, in which this Court

> held that where zoning boards issue inadequate or no findings of fact or opinion, courts may in some instances make their own findings and rulings, *Hess v. Upper Oxford Township*, [332 A.2d 836 (Pa. Cmwlth. 1975)]; *Rees v. Zoning Hearing Board of Indiana Township*, [279 A.2d 354 (Pa. Cmwlth. 1971)], or may order a remand for findings to be made. *Mill-Bridge Realty, Inc. v. Zoning Board of Adjustment*, [286 A.2d 483 (Pa. Cmwlth. 1972)] . . . .

*Heisterkamp v. Zoning Hearing Board of City of Lancaster*, 383 A.2d 1311, 1313 (Pa. Cmwlth. 1978).

However, *Heisterkamp* and the cases cited therein were decided prior to the adoption of Section 1005-A of the MPC in 1988. These cases were based on *former* Section 1010 of the MPC, *formerly* 53 P.S. §11010,[8] which was repealed and replaced by Section 1005-A. *Former* 1010 of the MPC provided that "[i]f the record

---

[8] Repealed by the Act of December 21, 1988, P.L. 1329.

8

does not include findings of fact . . . the [trial] court *may* make its own findings of fact based on the record below." *Formerly* 53 P.S. §11010 (emphasis added). When the General Assembly repealed this section and replaced it with Section 1005-A in 1988, it altered the discretionary "may" with the mandatory "shall." Under Section 1005-A, if there are no findings of fact accompanying a governing body's decision, the trial court must make its own. 53 P.S. §11005-A. Although the MPC does not place a time limit on when supporting findings of fact and conclusions of law may be added, it also does not afford a limitless time period for a governing body to do so.

Here, at the close of the hearing held on June 23, 2022, Borough Council voted to deny the Application. Reproduced Record (R.R.) at 804a-05a. On June 30, 2022, within the 45-day statutory window, Borough Council issued a written Decision denying the Application, but it did so without issuing findings of fact, credibility determinations, or conclusions of law. Borough Council "reserve[d] the right to amend and supplement its Decision with [] full Findings of Fact and Conclusions of Law if an Appeal [was] taken from this Decision and once the transcript of the hearing [was] completed." Borough Council Decision, at 2.

Our review of the procedural timeline reveals that Borough Council did not timely exercise its right to amend its Decision. Applicant filed its appeal with the trial court on July 29, 2022. On August 25, 2022, Borough Council filed the certified record, which included the hearing transcript. The parties then filed briefs. On March 3, 2023, the trial court heard oral argument. Once argument concluded, the appeal was ready for disposition. At no point during this period did Borough Council once attempt to amend its Decision. Borough Council waited until March 28, 2023, to file its motion to supplement the record with findings of fact and

9

conclusions of law, which Applicant opposed. R.R. at 886a-902a. Although the trial court denied the motion, the trial court allowed both parties to offer proposed findings of fact and conclusions of law, which the trial court duly considered before reaching its own findings and conclusions. Upon review, the trial court complied with the MPC mandate by making its own findings and conclusions and did not err or abuse its discretion by refusing Borough Council's untimely motion to supplement the record.

## B. Incompatible with Residential Use

Next, Borough Council contends that the trial court erred or abused its discretion by reversing Borough Council's determination that the Solar Project is not compatible with the uses in the area, namely, residential uses, an historic cemetery containing the final resting place for 50 civil war veterans, and a 200-year-old church. The Property abuts a large residential area placing the Solar Project as close as 50 feet from some residences. At least 20% of Parcel 5 is located in the R-1 District. Borough Council contends that the scale and intensity of the proposed use is inharmonious with the neighboring residential uses. Borough Council rejected, as not credible, the testimony of Applicant's experts to the contrary. Borough Council credited the testimony of Objectors that the proximity of the Solar Project to their homes would adversely affect them and destroy their views. Borough Council's interpretation of the Ordinance was entitled to deference, which was not shown.

A conditional use is not an exception to a zoning ordinance but instead is a use which is expressly permitted. *Greaton Props. v. Lower Merion Township*, 796 A.2d 1038, 1045 (Pa. Cmwlth. 2002). Indeed, Section 107(a) of the MPC defines "conditional use" as "[a] use permitted in a particular zoning district" subject

10

to certain provisions. 53 P.S. §10107(a). A governing body has authority to grant a conditional use "pursuant to express standards and criteria set forth in the zoning ordinance." Section 603(c)(2) of the MPC, 53 P.S. §10603(c)(2). A conditional use "indicates legislative acceptance that the use is consistent with the zoning plan . . . ." *In re McGlynn*, 974 A.2d 525, 537 (Pa. Cmwlth. 2009).

"An applicant is entitled to a conditional use as a matter of right, unless the governing body determines that the use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use." *In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa. Cmwlth. 2009). Harmony is considered a general policy concern, not an objective standard. *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 914 (Pa. Cmwlth. 1980).

An application for conditional use involves a shifting burden of persuasion:

> The applicant bears the initial burden of showing that the proposed conditional use satisfies the objective standards set forth in the zoning ordinance, and a proposed use that does so is presumptively deemed to be consistent with the health, safety and welfare of the community. Once the applicant satisfies these specific standards, the burden shifts to the objectors to prove that the impact of the proposed use is such that it would violate the other general requirements for land use that are set forth in the zoning ordinance, i.e., that the proposed use would be injurious to the public health, safety and welfare.

*Drumore Crossings*, 984 A.2d at 595 (footnote and citations omitted); *see EQT Production Co. v. Borough of Jefferson Hills*, 208 A.3d 1010, 1023 n.10 (Pa. 2019).

To rebut the presumption, the objectors must prove, "to a high degree of probability, the proposed use will adversely affect the public welfare in a way not normally expected from the type of use." *Aldridge v. Jackson Township*, 983 A.2d

11

247, 253 (Pa. Cmwlth. 2009). The objectors cannot meet their burden with a "speculation of possible harms." *Marquise Investment, Inc. v. City of Pittsburgh*, 11 A.3d 607, 615 (Pa. Cmwlth. 2010). In other words, the objectors' "evidence cannot consist of mere 'bald assertions, personal opinions and perceptions' of the use and its effect on the neighborhood." *Visionquest National, Ltd. v. Board of Supervisors of Honeybrook Township*, 569 A.2d 915, 917 (Pa. 1990) (citation and quotation omitted). Rather, the objectors must present substantial evidence that "the proposed use [will have] a detrimental effect on the public health, safety and welfare." *In re McGlynn*, 974 A.2d at 537. Testimony from the objectors "based on specific past experiences can satisfy this burden, but bald assertions, personal opinions[,] and speculation will not." *Allegheny Tower Associates, LLC v. City of Scranton Zoning Hearing Board*, 152 A.3d 1118, 1125 (Pa. Cmwlth. 2017). Further, "general testimony regarding a potential decline in property values and general aesthetic concerns is . . . insufficient to meet [that] burden." *Id.* at 1126.

The purpose of this C-1 District is to provide for

> the preservation and protection of natural areas and resources including, but not limited to surface waters, environmentally sensitive soils, steep slopes, woodlands and wildlife, while perpetuating the rural atmosphere, open spaces, and scenic beauty of the Borough. Different types of development are permitted provided that there is sufficient area to promote and maintain the public health, welfare and safety and not interfere with the natural features of the Zoning District. Public water is available to service this Zoning District. Portions of the Zoning District are also serviced by public sewer.

Ordinance, §303(7). Pursuant to Section 503 of the Ordinance, the C-1 District permits, by right, single-family dwelling units, manufactured homes, no impact home-based business, private garages, essential services, and public use. Ordinance,

§503.  It allows, as conditional uses, half-way houses; airport or heliport; communication tower stand alone; recreational outdoor facilities; theater; mineral extraction; alternative energy production facilities, including wind turbine, wind farms, major and minor solar energy systems; animal kennels or stables; institutional use; medical marijuana growing/processing facilities; and outdoor theaters. *Id*.

Section 1015 of the Ordinance governs conditional uses.  Section 1015(2)(C) of the Ordinance provides: "The relationship of the proposed use and development to other uses and activities existing or planned in the vicinity shall be harmonious in terms of their location and site relative to the proposed operation, and the nature and intensity of the use."  Ordinance, §1015(2)(C).  Section 1015(2)(D) of the Ordinance states:  "The relationship of the proposed use and development to other activities existing or planned in the vicinity shall be harmonious in terms of the character and height of buildings, walls, and fences so that the use, development, and value of adjacent property is not impaired."  Ordinance, §1015(2)(D).

The Solar Project is considered a "major solar energy system," which is expressly permitted in the C-1 District as a conditional use. Ordinance, §503.  The express inclusion of this use indicates a legislative determination that major solar energy systems are harmonious with all other permitted uses. *See In re McGlynn*, 974 A.2d at 537.  Notably, major solar energy systems are not permitted, by right, conditional use, or special exception, in any other zoning district. *See* Ordinance, §503.  Borough Council's argument that the proposed use is not harmonious with nearby residential uses goes against the legislative determination to include those uses together in the C-1 District.  Upon satisfying the objective standards set forth in the Ordinance, Applicant was entitled to a presumption that the use was compatible.

13

To rebut the presumption, Objectors testified that the proposed Solar Project would be detrimental to their neighborhood because it was located too close to their homes and would impair their aesthetic views and property values, which the trial court did not credit. Insofar as Borough Council argues that it found Objectors' testimony credible, Borough Council never made any credibility determinations. Rather, the trial court made all credibility determinations. Even if credited, Objectors' testimony amounts to speculation about potential harms and does not constitute substantial evidence that the Solar Project would generate adverse effects greater than that "normally expected" from this type of use. *See Aldridge*, 983 A.2d at 253. Thus, the trial court did not err in finding that Objectors failed to show that the Solar Project was detrimental to the public welfare to overcome the presumption that the Solar Project was compatible with the surrounding uses.

### C. Adjacent Property Values

Next, Borough Council contends that the trial court's finding that the value of the adjacent properties, including value based in aesthetic views and appearance, would not be impaired, is not supported by substantial evidence. According to Borough Council, Appraiser did not testify credibly as to the impact on property values. Appraiser was not a local appraiser, and he did not examine local comparable sales. Appraiser's testimony was based solely on articles and government studies, which are not credible comparisons and do not accurately reflect that adjacent property values would not be affected. Borough Council credited Objectors' testimony, as the persons who lived in the vicinity, on the impact the Solar Project will have on their picturesque community for the next 40 years.

14

The testimony of objectors as to reduced property values, without more, is insufficient to rebut the presumption that the conditional use is consistent with the public health, safety, and welfare. *Allegheny Tower*, 152 A.3d at 1126; *Marquise Investment*, 11 A.3d at 616. Rather, the objectors must demonstrate that the development would cause a decrease in property value more than would usually be associated with such a development. *Marquise Investment*, 11 A.3d at 616.

Here, the trial court found that the Solar Project would have no negative impact on the property values of adjacent or nearby property based on Appraiser's testimony and impact report. At the hearing, counsel for Borough Council accepted Appraiser's qualifications as an expert witness on property value impact analysis. R.R. at 690a. Appraiser explained his evaluation process, using comparative analysis and research. *Id*. at 693a-95a. He opined that the proximity of the Solar Project to the neighboring residences would not negatively impact or impair their property values. *Id*. at 695a, 700a. Appraiser was subject to cross-examination and fielded questions by Borough Council members and Objectors. Appraiser conceded that view is a characteristic that can enhance value, *id*. at 697a, but he opined that, based on his research, neighboring property "values weren't impacted because of the way the [solar] projects were laid out and developed," referring to setbacks and vegetation screens. *Id*. at 699a-700a. The trial court reviewed the qualifications and experience of Appraiser and the substance of his testimony and ultimately found him credible. Although Objectors testified that they believed the proximity of the Solar Project to their residences would impair their property values, they did not offer any expert valuation testimony in support. *See id*. at 704a, 742a, 759a, 767a-68a. Insofar as Borough Council asserts that it did not credit Appraiser's testimony, we reiterate that Borough Council made no credibility determinations, the trial court did. Upon

15

review, Appraiser's testimony constitutes substantial evidence to support the trial court's finding that the Solar Project would not impair neighboring property values.

### D. 80% of Parcel 5

Borough Council further contends that the trial court erred and abused its discretion by finding that 80% of the lot area of Parcel 5 is within the C-1 District to trigger application of Section 305 of the Ordinance. There is no substantial evidence to support this. Neither the zoning map nor the conditional use plan shows that 80% of Parcel 5 is in the C-1 District. No surveyor testified as to the veracity of Applicant's assertions.

Section 305 of the Ordinance provides that if at least 80% of a split-zoned lot is in one zoning district the entire lot may be treated as being in that district. Ordinance, §305. Specifically:

> When a lot is contained within more than one zoning district, any use is required to comply with all applicable design standards upon that portion of the lot within the zoning district in which the use is permitted. However, if a zoning district boundary line divides a lot placing at least 80% of the lot area in a particular zoning district, the location of such district boundary line may be construed to include the remaining 20% or less of the lot so divided.

*Id.*

Here, the trial court found that 80% of Parcel 5 is located in the C-1 District based on the testimony of Project Manager, the zoning map, and the absence of evidence to the contrary. At the hearing, Project Manager testified and demonstrated on the zoning map the location of Parcel 5's property lines as within both the C-1 and R-1 District. R.R. at 730a-31a. She testified, "per our analysis, [Parcel 5] has greater than 80[%] in the C-1 [D]istrict versus the R-1 [D]istrict." *Id.*

16

at 730a. She further testified that the front section that was closest to Swiss Street was located in the R-1 District. *Id.* at 731a. Borough Council reasserts that it did not find her testimony credible. As addressed above, Borough Council did not make any credibility determinations, the trial court did and found Project Manager's testimony credible. Although Borough Council disputes the accuracy of the property line, no evidence was offered to dispute Property Manager's testimony. As the trial court found, "[n]either the [Borough] Zoning Officer nor any witness testified that the C-1 portion of Parcel 5 was less than 80% of Parcel 5." F.F. No. 14. Upon review, the trial court's findings regarding Parcel 5 are supported by substantial evidence. We, therefore, conclude that the trial court did not err or abuse its discretion in concluding that, under Section 305, the entirety of Parcel 5 may be construed as located in the C-1 District.

### E. Emergency Services

Finally, Borough Council asserts that the trial court erred and abused its discretion by finding that Applicant met the objective criteria in the Ordinance with regard to emergency services. According to Borough Council, Applicant failed to offer an emergency plan as required by Section 602(56)(Q) of the Ordinance and failed to adequately address emergency services.

Section 602(56) of the Ordinance sets forth the supplemental regulations for wind farms and major solar energy systems. Ordinance, §602(56). Of relevance here, Section 602(56)(Q) provides:

> The applicant shall provide a copy of the project summary and site plan as required in 51 (A) above to the Borough Emergency Management Coordinator. The applicant shall prepare and coordinate the implementation of an emergency response plan for the wind farm or solar system acceptable to the Borough Emergency Management

17

> Coordinator *prior to the issuance of a zoning permit for the proposed use*.

Ordinance, §602(56)(Q) (emphasis added). An emergency plan is required prior to the issuance of a zoning permit but is silent with regard to a conditional use application.

To the extent Borough Council attempts to conflate the permit process and conditional use process, its argument is belied by the Ordinance itself. Section 202 of the Ordinance defines a "Permit" as "a document issued by the Zoning Officer authorizing someone to undertake certain activities under this Ordinance." Ordinance, §202. In contrast, it defines "Conditional Use" as "a use listed as a conditional use under the Use Table of Part 5 of this Ordinance, which is only permitted after review by the Borough Planning Commission and approval by Borough Council under Part 10 of this Ordinance." *Id*.

Part 10 of the Ordinance governs zoning enforcement and administration. Of relevance here, Section 1002(8) of the Ordinance provides:

> Issuance of Zoning Permit Upon Approval by Zoning Hearing Board or Borough Council. Although initially denied by determination of the Zoning Officer, the Zoning Officer must issue a zoning permit once the use, structure or building has been subsequently approved by special exception or variance by the Zoning Hearing Board or conditional use by Borough Council as the case may be. A zoning permit shall be issued within thirty (30) days of issuance of a written Decision approving the application by either the Zoning Hearing Board or Borough Council. Should an aggrieved party or person appeal the written Decision, any work performed shall be at the applicant's own risk should the Decision be reversed on a subsequent appeal to the Court of Common Pleas or an appellate court.

Ordinance, §1002(8). The Ordinance makes it clear that the first step in the process is conditional use approval. Once a conditional use is approved, an applicant must

submit an emergency plan before a permit will be issued. Because Section 602(56)(Q) of the Ordinance only requires implementation of an emergency plan before the issuance of a "zoning permit," and a conditional use approval is separate from a zoning permit, the trial court did not err or abuse its discretion in determining that Applicant was not required to implement the emergency response plan before obtaining conditional use approval.

## IV. Conclusion

Accordingly, we affirm the order of the trial court.

MICHAEL H. WOJCIK, Judge

19

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G. Morris Solar, LLC             :
                                               :
                v.                     :   No. 1380 C.D. 2023
                                                 :
Borough Council of the        :
Borough of Gratz,             :
                                               :
                Appellant    :

**O R D E R**

AND NOW, this 14th day of March, 2025, the order of the Dauphin County Court of Common Pleas, dated October 24, 2023, is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge