**Servants OASIS, Appellant**

v.

**ZONING HEARING BOARD
OF SOUTH ANNVILLE
TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued March 10, 2014.

Decided June 18, 2014.

David J. Tshudy, Harrisburg, for appellant.

Josele Cleary, Lancaster, for appellee South Annville Township.

Michael H. Small, Palmyra, for appellee Zoning Hearing Board of South Annville Township.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and MARY HANNAH LEAVITT, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge LEAVITT.

Servants Oasis appeals an order of the Lebanon County Court of Common Pleas (trial court) rejecting its application for a special exception to develop a religious retreat on its land in South Annville Township. In doing so, the trial court affirmed the decision of the South Annville Township Zoning Hearing Board (Zoning Board). Because Servants Oasis satisfied the objective criteria for a special exception found in the South Annville Township

Zoning Ordinance (Zoning Ordinance),[1] we reverse.

Servants Oasis, a 501(c)(3) non-profit organization,[2] proposes to develop a religious retreat on three contiguous parcels of land in Lebanon County (Property), of which approximately 153 acres are located in the Rural Residential District in South Annville Township. The Property is owned by Roy and Janice Smith and has been developed with a single-family home and several accessory buildings. The Smiths leased the Property to Servants Oasis in 1999 for a term of 20 years and have recently extended the lease for an additional 20 years.

The sole access to the Property is from Wild Apple Drive, which is a public road that intersects Route 322 and terminates in a cul-de-sac near the northeast corner of the Property. Gumtree Road is a private road on the Property that connects to Wild Apple Drive. The closest main road is Route 322, which is approximately 5,000 feet from the Property.

On March 4, 2011, Servants Oasis filed an application with the Zoning Board requesting a special exception to develop a religious retreat on the Property.[3] The application stated that the maximum occupancy of the Property would be 297 persons at full build-out. The application explained that Servants Oasis planned to construct a building with overnight facilities for up to 93 guests. The retreat would be operated by volunteers for the foreseeable future and built in phases, depending on the availability of funding.

Currently, the Property has an on-lot sewage treatment system with capacity to serve 40 overnight campers or 50 daytime visitors. In its application, Servants Oasis included a water and sewer feasibility study for construction of a single community on-lot sewage disposal system, such as an elevated sand bed, to accommodate the additional visitors expected for the full build-out phase. This study reported that a packaged wastewater treatment plant would be too costly.

In response to questions from the Township engineer about the feasibility of on-lot sewage treatment, Servants Oasis did additional testing and submitted a revised sewer feasibility study on February 23, 2012. The February study reported that site testing did not produce a suitable place on the Property for an on-lot treatment system, as proposed in the application. It went on to report that a packaged wastewater treatment facility would be feasible based upon the limits provided by the Pennsylvania Department of Environmental Protection (DEP) for discharge into Buckholder Run, a stream that runs through the Property. The February study also stated that the packaged wastewater treatment system would meet DEP's effluent discharge but not "the effluent mass loading limitations for Total Nitrogen and Total Phosphorus for this site." Reproduced Record at 1103a (R.R. ———). Accordingly, the February study acknowledged that Servants Oasis would need to purchase nutrient trading credits.[4]

1. CODE OF ORDINANCES OF THE TOWNSHIP OF SOUTH ANNVILLE (1986), *as amended*, Chapter 27 (Zoning).

2. Section 501(c)(3) of the Internal Revenue Code exempts corporations and foundations operated "for religious [or] charitable" purposes from taxation. 26 U.S.C. § 501(c)(3).

3. Servants Oasis also requested four variances from the Zoning Ordinance that are not relevant to the current appeal.

4. A nutrient trading credit is defined as "[t]he unit of compliance that corresponds with a pound of reduction of a nutrient and that has been approved by the Department of Environmental Protection." Section 3 of the Water and Sewer Systems Assistance Act, Act of July

On April 13, 2012, Servants Oasis submitted a final sewer feasibility study. In the April study, Servants Oasis indicated that there were several spots on the Property that "may be suitable for installation of several elevated sand mound beds." R.R. 1155a. Consequently, Servants Oasis proposed to construct multiple on-lot sewage disposal systems instead of a single packaged treatment facility. In conclusion, the April study stated:

> During the initial phase of the project the existing on-lot sewage treatment system can be utilized [to accommodate 40 to 50 visitors], as previously permitted and approved. Subsequent phases will require the construction of additional on-lot sewage treatment systems in order to accommodate the sewage flow from each development phase.

R.R. 1157a. Should multiple on-lot sewage treatment systems prove not feasible, the April study concluded that "the next most feasible and economical option for treating the sewage flows from this project is the construction of an on-site packaged wastewater treatment facility." R.R. 1157a–58a. The April study concluded that "it is anticipated that the sanitary sewage flows from the proposed use can be safely treated on the project site." R.R. 1158a.

Public hearings were held before the Board on May 21, 2011; August 18, 2011; October 13, 2011; March 22, 2012; April 26, 2012; May 31, 2012; July 12, 2012; August 23, 2012; and September 20, 2012.

At the April 26, 2012, hearing, Michael R. Swank, P.E., Servants Oasis' engineer, testified about the final April sewer feasibility study. Swank stated that in order to design, permit and obtain approval for an on-lot disposal system, Servants Oasis would need to do percolation tests and obtain the county planning department's approval. Swank also stated that in the event the on-lot systems could not be built, a packaged wastewater treatment plant would be constructed. Swank acknowledged that he was not certain that Servants Oasis would be able to obtain the necessary nutrient credits for such a system. However, at the next hearing on May 31, 2012, Swank testified that nutrient credits were available for purchase. At the July 12, 2012, hearing, Swank acknowledged that if Buckholder Run ran dry, DEP would establish different effluent discharge limits. Nevertheless, Swank noted that if DEP lowered the effluent discharge limits, the packaged wastewater treatment plant could be designed to meet those limits. At the September 20, 2012, hearing, Swank testified that the packaged wastewater treatment plant was a viable option, but he did not state that it was the plan that would be pursued. It depended on whether on-lot systems could be approved.

Jeffrey Sterner, Servants Oasis' president, testified at the September 20, 2012, hearing that "[o]ur preferred scenario and how we have approached this project is that at full build-out [the retreat] would use a package treatment plant." R.R. 689a. Sterner stated that Servants Oasis acknowledged and accepted the risk that it may not be able to reach full build-out of the retreat, whether due to the unavailability of nutrient credits, DEP's denial of permits for a packaged wastewater treatment facility, or any other reason.

9, 2008, P.L. 915, 32 P.S. § 695.3. "Under this definition, if the actual nutrient discharge amount is less than the discharge limit set forth in a[ ] ... permit, the difference is a nutrient credit. Nutrient credits can be sold to another entity which can use them to reduce the nutrient discharge amount exceeding the allowable limit." *Sewer Authority of the City of Scranton v. Pennsylvania Infrastructure Investment Authority of the Commonwealth*, 81 A.3d 1031, 1035 (Pa.Cmwlth.2013).

During the hearings, several adjacent landowners raised concerns about the proposed retreat. These concerns included the retreat's impact on property values and the character of the neighborhood; whether emergency responders would be able to assist persons at the retreat; the increase in traffic; and the fact that Buckholder Run has occasionally run dry. Regarding the safety concern, Paul E. Longenecker, Chief of the Annville Fire Department, testified that the existing single access road to the Property is narrow. Chief Longenecker opined that the Property should have two means of access based upon his experience during recent severe storms and considering that retreat guests will have multiple camp fires and limited access to water. An adjoining landowner also testified tornadoes in the area in 2004 and 2010 had blocked the access roads to the Property for two days.

On December 13, 2012, the Zoning Board denied Servants Oasis' application for a special exception for the stated reason that it did not satisfy the specific and objective requirements for a special exception. The Zoning Board also concluded that the proposed retreat would be detrimental to the public health, safety and welfare. Servants Oasis appealed the Zoning Board's decision to the trial court, which did not take additional evidence and affirmed the Zoning Board's decision.

 On appeal,[5] Servants Oasis presents three issues for our consideration.

First, it argues that the Zoning Board erred in determining that Servants Oasis did not adequately identify the proposed method of sewage disposal for the retreat. Second, Servants Oasis argues that the Zoning Board erred in finding that it did not submit an adequate emergency plan of access. Third, Servants Oasis contends that the Zoning Board erred in finding that the proposed retreat would detrimentally affect the public health, safety and welfare on the basis of speculative testimony from the objectors.

 We begin with a review of the special exception principles. A special exception use is a permitted use to which an applicant is entitled if it meets the objective standards in the zoning ordinance. *Union Township v. Ethan Michael, Inc.,* 979 A.2d 431, 437 (Pa.Cmwlth.2009). The applicant bears the burden of production and persuasion to prove that the proposed use meets the special exception requirements. *Greaton Properties, Inc. v. Lower Merion Township,* 796 A.2d 1038, 1045 (Pa.Cmwlth.2002). Once the applicant's burden is satisfied, a presumption arises that the use is consistent with the health, safety and welfare of the community. *Id.* at 1045–46. The burden then shifts to the objectors to prove that the proposed use will have a generally detrimental effect on the public health, safety and welfare. *Id.* at 1046.

A retreat is one of the enumerated special exception uses that can be located in

---

**5.** When the trial court takes no additional evidence in a land use appeal, our scope of review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Segal v. Zoning Hearing Board of Buckingham Township,* 771 A.2d 90, 94 n. 6 (Pa.Cmwlth.2001). A board abuses its discretion when its findings are not supported by substantial evidence. *Id.* Substantial evidence means relevant evidence that a reasonable mind might accept as ade-

quate to support a conclusion. *McClintock v. Zoning Hearing Board of Fairview Borough,* 118 Pa.Cmwlth. 448, 545 A.2d 470, 472 (1988). The board, as fact-finder, determines the credibility of witnesses and weight given to their testimony, and is free to accept or reject the testimony of any witness, in whole or in part. *Hawk v. City of Pittsburgh Zoning Board of Adjustment,* 38 A.3d 1061, 1065 (Pa. Cmwlth.2012).

the Rural Residential District. ZONING OR-DINANCE § 502.8.B(1)-(26). A proposed special exception use may not have "an adverse effect on the welfare of the area due to noise, odor, dust, glare, lighting, traffic circulation or design." *Id.* § 502.8. One of the more specific requirements is that the applicant present a water and sewer feasibility study. *Id.* § 502.8.B(2) ("The water and sewer feasibility study shall specify the ... method of sewage disposal, and other relevant information."). There are other specific requirements. The applicant must submit a traffic impact study, in accordance with Section 1419.3 of the Zoning Ordinance,[6] and an emergency plan of evacuation, in accordance with Section 1420.21 of the Zoning Ordinance.[7] Finally, the applicant must present a detailed site plan; address the method for the treatment and disposal of sewage; and provide the Zoning Board with plans, studies or other data to demonstrate compliance with all applicable regulations. *Id.* § 1904.2.

■ In its first issue, Servants Oasis contends that the Zoning Board erred in finding that it did not identify the proposed method of sewage disposal for the retreat. The April study explained that Servants Oasis intended to install a packaged wastewater treatment system at full build-out of the retreat. Until full build-out, the April study stated that the retreat would use the existing on-lot system and expand upon that system, to the extent it will be possible, with several small on-lot

disposal systems. Any expansion of the existing system or the construction of a packaged wastewater treatment facility will require permits from DEP. The Zoning Ordinance requires the applicant to identify its method of sewage disposal, not to certify that the proposal has been approved by DEP. In any case, if the Zoning Board was concerned that Servants Oasis would develop the retreat without a viable means of sewage disposal, it should have approved the special exception with conditions.

South Annville Township and the Zoning Board (collectively, Township) counter that Servants Oasis' witnesses did not precisely address the sewage treatment methodology. Servants Oasis did not verify that the expansion of the existing disposal system or the construction of a packaged wastewater treatment facility was technically viable; it is possible that neither option will be approved by DEP.[8] Further, Servants Oasis did not prove that it can purchase the nutrient trading credits necessary for a packaged wastewater treatment facility.

We conclude that the Zoning Board held Servants Oasis to a standard of proof higher than that prescribed by law. This Court's decision in *In re: Appeal of Drumore Crossings, L.P.,* 984 A.2d 589 (Pa. Cmwlth.2009), is instructive. In *Drumore Crossings,* the applicant sought to construct a shopping center. The hearing officer appointed by the township's board of supervisors held that the applicant did

---

**6.** This requirement may be waived by the Township if the applicant makes a contribution to the Township. ZONING ORDINANCE § 1419.4. The Township and Servants Oasis entered into an agreement for contribution in lieu of traffic impact study on April 13, 2011.

**7.** Section 1420.21 requires the owner to prepare for emergency conditions "such as fire, assuming the worst condition." ZONING ORDINANCE § 1420.21.A.

**8.** In its decision, the Zoning Board held that "no sewage disposal system has been approved for the Retreat as proposed, ... no one knows at this juncture what system may be approved, and ... it is a possibility that no system will be approved." Zoning Board Decision at 14.

not prove that it would build an approved method of sewage disposal. The evidence showed that DEP was not currently issuing permits for the applicant's proposed sewage disposal method. This Court reversed, holding that an applicant for a special exception is not required to prove that it will be able to obtain the requisite DEP permit during the early stages of the zoning process. Indeed, this is impossible because an applicant must secure zoning approval before DEP will even establish the effluent discharge limits and review the proposed system. We held that a zoning board's authority is limited to ensuring that the proposed system is an accepted method for waste management by DEP. *See also Stewart v. Zoning Hearing Board of Radnor Township,* 110 Pa. Cmwlth. 111, 531 A.2d 1180, 1182–83 (1987) (holding that zoning board lacked jurisdiction pursuant to the Pennsylvania Sewage Facilities Act[9] to approve or disapprove a proposed sewage system as appropriate).

In the present case, even though the Property consists of 153 acres, Servants Oasis acknowledged that it may not be able to construct multiple on-lot sewage disposal systems. However, Servants Oasis indicated its willingness to pursue the alternative of a packaged wastewater treatment facility to meet the preliminary effluent discharge limits established by DEP; this facility is an approved method of sewage disposal. DEP may reduce the effluent discharge limits or impose other requirements that will require revisions to the packaged wastewater treatment facility proposed in the April study, but these are decisions for DEP to make. The Zoning Board's only concern should have been whether Servants Oasis has identified a means of sewage disposal, not whether that method would be approved by DEP.

We disagree with the Township that *Elizabethtown/Mt. Joy Associates, L.P. v. Mount Joy Township Zoning Hearing Board,* 934 A.2d 759 (Pa.Cmwlth.2007), requires another result. In *Elizabethtown,* the developer submitted a plan that was loose and conceptual. This Court held that when the zoning ordinance contains detailed requirements,[10] a general promise to comply with the ordinance is insufficient. In the present case, the Zoning Ordinance only requires Servants Oasis to specify a "method of sewage disposal." ZONING ORDINANCE § 502.8.B(2). Nothing in the Zoning Ordinance requires Servants Oasis to *prove* that the proposed methods of sewage disposal are technically feasible. Furthermore, unlike the applicant in *Elizabethtown,* Servants Oasis submitted a detailed sewer feasibility study, not a conceptual plan. The proposal to construct multiple on-lot facilities was contingent on finding suitable locations. The proposal alternative was a packaged wastewater treatment facility based on the preliminary effluent discharge limits provided to Servants Oasis by DEP.

---

9. Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §§ 750.1–750.20a.

10. The zoning ordinances at issue in *Elizabethtown* required extensive details, such as the dimensions, location and methods for illuminating signs. The applicant's submitted plan only identified a single sign, despite evidence that the development would have additional illuminated signs. No evidence was submitted regarding the number, dimension, location and style of these additional signs. Additionally, the applicant was required to submit an exterior lighting plan including a detailed grid of illumination levels, the height and location of mounting fixtures, details on how the light would be shielded, etc. Instead, the applicant merely stated that the final lighting plan would conform to the applicable zoning requirements without providing additional details.

The trial court overlooked the fact that the Property has an on-lot disposal system in place that can handle approximately 40 overnight campers or 50 daytime guests. Servants Oasis proposed constructing the additional sewage treatment facilities in order to expand the maximum number of visitors to the retreat to 297. However, Servants Oasis acknowledged that it may not be able to do so if neither sewage treatment system proves viable. Section 912.1 of the Pennsylvania Municipalities Planning Code [11] specifically authorizes the Zoning Board to "attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance." 53 P.S. § 10912.1. That should have been done in this case. A reasonable condition would require any expanded development of the Property to be conditioned on obtaining the requisite approvals from DEP for sewage treatment.[12] *See Kohr v. Lower Windsor Township Board of Supervisors*, 910 A.2d 152, 159 (Pa.Cmwlth.2006) (holding that township should have approved preliminary subdivision plan conditioned on applicant obtaining necessary permits from DEP).

In summary, Servants Oasis has satisfied the objective requirement in the Zoning Ordinance by identifying a method of sewage disposal. It has proved that the existing system can serve 40 to 50 visitors. Likewise, it has sufficiently identified alternative methods of sewage disposal for the fully built-out retreat: multiple on-lot facilities or a single packaged wastewater treatment plant. The Zoning Board erred in withholding its approval based upon concerns that neither system would be permitted. This should have been addressed by the imposition of reasonable conditions.

■ Next, Servants Oasis argues that the Board erred in finding that it did not submit an adequate "emergency plan of access." ZONING ORDINANCE § 502.8.B(a). Servants Oasis contends that it complied with what it characterizes as "vague guidance" in the Zoning Ordinance on this requirement. Servants Oasis also argues that nothing in the Zoning Ordinance requires an applicant to submit an "emergency evacuation plan" or "emergency management plan." The Township does not directly address this issue in its brief. In its opinion, the Zoning Board noted that Chief Longenecker testified that two means of access to the Property was preferable for emergency responders.

We agree with Servants Oasis that the emergency plan of access in its application satisfied the requirements of the Zoning Ordinance. The Zoning Ordinance states

---

**11.** Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10912.1.

**12.** In fact, the Township and Servants Oasis agreed to numerous conditions if the special exception application was granted by the Zoning Board. In particular, the conditions regarding sewage treatment state that Servants Oasis would be permitted to use the current system for 40 to 50 visitors. If Servants Oasis sought to expand the use, the conditions would require Servants Oasis to obtain "all necessary permits and approvals from the Township and the Pennsylvania Department of Environmental Protection" prior to the is-

suance of any permits. R.R. 1250a. Servants Oasis would be required to conduct additional testing to prove the feasibility of an on-lot system and follow numerous conditions if a packaged wastewater treatment facility was constructed. Notably, if Servants Oasis was unable to purchase the required nutrient trading credits, it would be required to close the retreat until the system was brought back into compliance with the applicable regulations. However, the Township stated at the hearing that it took no position for or against the special exception application, leaving it to the Zoning Board to decide.

that "[t]he applicant shall submit an emergency plan of access with its application to the Zoning Hearing Board meeting the requirements of § 1420.21 of this Chapter." ZONING ORDINANCE § 502.8.B(6). Section 1420.21 states that "[a] written plan of emergency access must be provided by the owner in the event of emergency conditions such as fire, assuming the worst condition." *Id.* § 1420.21.A. Servants Oasis' application stated it would prepare an emergency evacuation plan; train its employees and volunteers; provide a suitable entrance for first responders; and improve existing roadways. This plan complies with what little guidance is provided in Section 1420.21 of the Zoning Ordinance. We also agree with Servants Oasis that nothing in the Zoning Ordinance requires a second means of access to the Property. The Zoning Board erred in holding that Servants Oasis did not satisfy the objective requirements of the Zoning Ordinance regarding an emergency plan of access.

█ Finally, Servants Oasis argues that the Zoning Board erred in finding that the proposed retreat would be detrimental to public health, safety and welfare based upon the subjective and speculative objections of the objectors. Servants Oasis points out that once it satisfied the objective requirements of the Zoning Ordinance for a special exception, a presumption arose that the proposed use is consistent with the health, safety and general welfare of the community. The burden then shifted to the objectors to present evidence overcoming that presumption. Servants Oasis argues that none of the objectors presented any evidence to support their speculative concerns. The objectors' primary concern was an increase in traffic, which this Court has often held is insufficient to deny a special exception. *See, e.g.,*

*Accelerated Enterprises, Inc. v. Hazle Township Zoning Hearing Board,* 773 A.2d 824, 827 (Pa.Cmwlth.2001).

The Township counters that the Zoning Board made specific findings of fact that it contends, collectively, constitute substantial evidence that the proposed retreat will be detrimental to the public health, safety and welfare. For example, the existing access road is narrow and was recently blocked for two days by tornado damage, according to the testimony of neighboring landowners. This evidence, the Township argues, is not speculative.

█ As noted, once an applicant satisfies a zoning ordinance's objective requirements for a special exception, the burden shifts to the objectors to persuade the zoning board that the proposed use will have a generally detrimental effect on the public health, safety and welfare. *Greaton Properties,* 796 A.2d at 1045–46. To satisfy this burden, the objectors "must show a *high probability* that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a *substantial threat* to the health and safety of the community." *Id.* at 1046 (emphasis added). Testimony based on specific past experiences can satisfy this burden, but bald assertions, personal opinions and speculation will not. *Visionquest National, Ltd. v. Board of Supervisors of Honey Brook Township, Chester County,* 524 Pa. 107, 569 A.2d 915, 917–18 (1990).

█ In this case, the objectors' primary concern was that the retreat would cause an increase in traffic.[13] The objectors stated that their traffic concerns would be the same regardless of the type of retreat. However, increased traffic is

---

13. Other concerns, such as noise, glare, and increased fire risk, were also raised, but no specific evidence was introduced to substantiate these concerns.

not a sufficient ground to deny a special exception, unless it is highly probable that the proposed use will generate traffic "not normally generated by that type of use and that the abnormal traffic threatens safety." *Accelerated Enterprises*, 773 A.2d at 827. The retreat will likely result in an increase of traffic. Objectors offered no evidence, however, that the proposed retreat will generate higher traffic than any retreat, which is a permissible use.

To support its contention that the proposed retreat poses a danger to public health, safety and welfare, the Township cites this Court's decision in *Hogan, Lepore & Hogan v. Pequea Township Zoning Board*, 162 Pa.Cmwlth. 282, 638 A.2d 464 (1994), *overruled in part by Wistuk v. Lower Mt. Bethel Township Zoning Hearing Board*, 592 Pa. 419, 925 A.2d 768 (2007). In *Hogan*, an applicant sought to use its land for mining and quarrying purposes. The zoning board found that the proposed use would harm the public health, safety and welfare for a number of reasons, including increased traffic, noise levels, blasting, and air and water pollution. In particular, there was concern that neighboring schools and farms would be threatened by flying debris, and experts testified that it was "a virtual certainty" that the quarry would have an adverse effect on neighboring water wells and wetlands. *Id.* at 473. Analogizing the instant case to *Hogan*, the Township argues that the sole means of access to the Property is by narrow roads with poor sight distances that have been blocked by storm damage in the recent past. The Township contends that this "limited access" is a unique feature that, combined with Servants Oasis' one-page emergency plan of access, "sufficiently demonstrates a detrimental effect on public health, safety and welfare." Township's Brief at 35. We disagree.

Unlike in *Hogan*, there was no testimony in the present case that a danger to the public health, safety or welfare is "a virtual certainty" to occur. Recent storm damage had blocked access to the Property for several days, and Chief Longenecker expressed concerns regarding emergency responder access. However, Servants Oasis submitted an emergency plan of access that satisfied the scant objective requirements of the Zoning Ordinance for such a plan. Nowhere does the ordinance require multiple means of access to a retreat. Natural disasters can block multiple means of access. The Zoning Board assumes that all evacuations must be done by vehicle. Route 322 is 5,000 feet from the Property. This is not a long walk for those at the retreat who are ambulatory.

The Zoning Board erred in holding that Servants Oasis' emergency plan of access was not sufficiently detailed and that a second means of access to the Property was necessary. Further, the evidence does not establish a high degree of probability that Servants Oasis' proposed use presents a substantial threat to the public health, safety and welfare.

For these reasons, we reverse the trial court's order denying Servants Oasis' land use appeal.

### ORDER

AND NOW, this 18th day of June, 2014, the order of the Lebanon County Court of Common Pleas dated July 22, 2013, in the above–captioned matter is hereby REVERSED.