IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| George Saltzman, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1252 C.D. 2024 |
| | : | Argued: September 9, 2025 |
| Zoning Hearing Board of the | : | |
| Borough of Mount Penn and | : | |
| Antietam School District | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE LORI A. DUMAS, Judge
                   HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  November 20, 2025


George Saltzman (Objector) appeals an order of the Court of Common Pleas of Berks County (trial court) granting Antietam School District (School District) a special exception to change the grade assignments at its primary school building and variances from the parking requirements in the Joint Zoning Ordinance for Lower Alsace Township and Mount Penn Borough of 2011 (Zoning Ordinance).[1] On appeal, Objector argues that the School District's evidence did not demonstrate compliance with the objective criteria for a special exception or a variance. Alternatively, Objector argues that his evidence on traffic, parking, trespassing, and littering demonstrated a high probability of harm to the public interest that required the special exception to be denied.  For the following reasons, we affirm the trial court.

---

[1] Joint Zoning Ordinance for Lower Alsace Township and Mount Penn Borough of 2011, available at: https://img1.wsimg.com/blobby/go/221ac26c-a63f-4e2d-a3a0-ff77c257ad19/ Joint%20Zoning%20Ordinance-7b7905d.pdf (last visited November 19, 2025).

# Background

The School District serves residents of Mount Penn Borough (Mount Penn) and Lower Alsace Township (Lower Alsace) in Berks County, Pennsylvania. It owns three school buildings: a junior/senior high school in the City of Reading; an elementary school in Mount Penn; and a primary school in Mount Penn.

At issue in this appeal is the primary school property (Subject Property) located in the R-4 High Density Residential District, which permits schools and educational uses by special exception. ZONING ORDINANCE, §406(D)(10). Approximately 1.72 acres in size, the Subject Property was used as the Mount Penn High School for many years, beginning in the 1920s. In 1989, the School District sold the building. In 2001, the School District repurchased the building and applied for a special exception to use the Subject Property as a primary school for kindergarten and first grade. The Mount Penn Zoning Hearing Board (Zoning Board) granted a special exception to use the Subject Property as a school and to use the gymnasium and auditorium for an accessory use. The Zoning Board also granted the School District a variance from the off-street parking requirements.

The Zoning Board's decisions were appealed, and the appeal resolved by a stipulation (2004 Stipulation) that required the School District to:

> (A)  provide forty-four (44) parking spaces for the elementary school building project submitted to the Borough of Mount Penn in accordance with the Plan [].
>
> (B)  implement a Board Policy requiring all employees to use the forty-four (44) parking spaces as depicted on the Plan. The Board Policy will also direct that those using the building for other purposes shall fill those spaces first prior to using any parking spaces that are not on or adjacent to the building.
>
> (C)  permit the auditorium and gymnasium at the building located at North 25th and Filbert Streets to be used on a District wide basis by all students of the Antietam School District, but

2

should be limited to only those activities that are directly [sic] to the academic, educational and/or co-curricular activities of the Antietam School District. Those uses shall include but not be limited to, the following type of activities: sports practices, intra-murals, academic functions, athletic events, choral and instrumental concerts, drama and theater productions, class plays, commencement, holiday/spring concerts and performances, class assemblies, graduation ceremonies, student award assemblies, student opening ceremonies, in service instruction, academic events and other such similar student events.

Reproduced Record at 429a (R.R. __). Thereafter, the School District filed another special exception application to add second-grade students to the school, which the Zoning Board approved. From 2018 until 2023, the Subject Property was used for grades kindergarten through second grade.

In July of 2023, the junior/senior high school was damaged in a flood of Antietam Creek and could not open for the 2023-2024 school year, requiring the transfer of students to different locations. With temporary approval of the Mount Penn Zoning Hearing Board (Zoning Board), third-grade students were assigned to the Subject Property for the 2023-2024 school year.

On January 29, 2024, the School District applied for a special exception to use the Subject Property for grades 7 through 12, beginning with the 2024-2025 school year. That same day, the School District applied for variances from the parking requirements in the Zoning Ordinance. Specifically, it sought a variance from Section 651(D)(7) relating to the off-street parking, loading space, and interior access lane requirements for any institutional use; Section 804(R) relating to the number of off-street parking spaces needed for school and education uses; and Section 804(T) relating to a reduction for the total number of off-street parking spaces for an institutional use. ZONING ORDINANCE, §§651(D)(7), 804(R), 804(T).

3

The Zoning Board held a hearing on the School District's applications, at which Objector was granted party status. The Zoning Board granted a special exception to use the Subject Property for grades 7 through 12. It also granted the School District's request for three variances. The first variance relieved the School District of the requirement that parking spaces had to be located within 400 feet of the Subject Property. The second variance relieved the School District from the parking requirements for the auditorium. The third variance allowed the School District to use its athletic field parking, if needed, for the Subject Property.[2]

Objector appealed the Zoning Board's decision.

**Trial Court Proceedings**

The trial court held a *de novo* hearing on Objector's land use appeal and that of another objector in *Jennifer Lopez v. Zoning Hearing Board of Mount Penn Borough and the Antietam School District* (CCP Docket No. 24-3931). To support its application, the School District presented the testimony of its superintendent, Dr. Timothy Matlack, and its architect, Philip Leinbach.

Dr. Matlack testified that in July of 2023, the Antietam Creek flood rendered the junior/senior high school building unusable and required an immediate revision to classroom assignments for the 2023-2024 school year. For the 2024-2025 school year, the School District "formulated more permanent plans for the use of its buildings." Notes of Testimony, 8/12-13/2024, at 20 (N.T. __); R.R. 74a. Under that plan, the Subject Property will serve grades 9 through 12. Because the building had previously been used as a high school, it had "appropriately sized" classrooms, cafeteria, gymnasium, and auditorium. N.T. 21; R.R. 75a. No change to the footprint or height of the building would be needed to accommodate the high

_____

[2] The athletic field, or A-Field, is located approximately two blocks from the Subject Property and outside Mount Penn.

school students. The application request covered grades 7 through 12 because some middle school students in accelerated programs will take classes in the high school. Dr. Matlack clarified that the School District does not intend "to house more than four grade levels in the [Subject Property] building[.]" N.T. 36; R.R. 90a.

Dr. Matlack testified that the Subject Property needs 129 parking spaces to use the Subject Property as a high school, and 183 parking spaces have been secured. There are 32 parking spaces on site and 12 on-street parking spaces.[3] Faith Lutheran Church and Trinity United Church of Christ (Trinity UCC) have provided 60 parking spaces for the Subject Property. There are also 79 parking spaces around the A-Field that are approximately 2 blocks, or 600 feet, from the Subject Property.[4] Dr. Matlack testified that few high school students drove to school. In the 2022-2023 school year, the School District issued 12 parking permits to high school students. Most students walked or were driven by others. Dr. Matlack testified that the School District's traffic study determined that using the Subject Property for grades 9 through 12 would not create "any kind of substantive change to the volume of traffic in the area." N.T. 47; R.R. 101a.

Dr. Matlack described the Subject Property's neighborhood as "largely residential," with a mix of residential, municipal and church properties. N.T. 42; R.R. 96a. The Subject Property's use as a high school will not alter that mix.

Dr. Matlack testified that in the 1950s, the Subject Property became a high school. The first floor of the building has a gymnasium, cafeteria, and 6 or 7 classrooms; the second floor has 10 classrooms; and the third floor has additional classrooms and the administrative office. The auditorium is on the second and third

_____

[3] These 44 spaces were required as part of the 2004 Stipulation. N.T. 39; R.R. 93a.

[4] The parking spaces at the A-Field are located on the surrounding streets. There are 22 spaces on High Street; 36 spaces on Byram Street; and 22 spaces on Prospect Street.

floors. The School District intends to continue to use the auditorium for extracurricular activities, band practice and performances, as well as school plays.

Philip Leinbach, Architect and President of AEM Architects, testified. He explained that, in 2018, his firm supervised renovations to the Subject Property done to house elementary age children. After the 2023 flood, his firm prepared the plans to repurpose the Subject Property for a high school.

As to parking, Leinbach testified that the parking spaces at Faith Lutheran Church, Trinity UCC, and at the A-Field are approximately two blocks from the Subject Property; all meet the requirements of the Zoning Ordinance. They measure 10' by 20' feet and are marked and illuminated.

Leinbach stated that the School District needs dimensional variances from the maximum 400-foot distance for off-street parking and the maximum 500-foot distance for the overflow parking at the A-Field. He explained that the Subject Property is fully developed and cannot accommodate any more parking spaces; there are additional constraints because of the slope to the land. Leinbach confirmed Dr. Matlack's testimony that the Subject Property would satisfy the Zoning Ordinance's parking provision with the minor distance variances requested. The variances are the minimum necessary to allow the School District to use the Subject Property as a high school.

Leinbach explained that because most of the high school student population resides in Mount Penn, more students will be walking to school than when the high school was located in Reading. Traffic conditions will improve because the School District does not provide busing for high school students. Few students will drive; only 12 student parking permits were issued for the 2022-2023 school year.

In opposition, Objector and another resident testified.[5]  Objector lives approximately 300 feet from the Subject Property, at 6 Earle Gables Court.  He testified that when the Subject Property was previously used for high school students, the students trespassed, littered, and parked without consideration of the neighbors.  The students were known to use profane words and gestures.  In 1988, when the Subject Property stopped being used as a school, the problems stopped and the neighborhood "was beautiful."  N.T. 241; R.R. 295a.

In 2004, when the Subject Property returned to a school use, parking "got worse because of people dropping off and just the congestion that was there." N.T. 242; R.R. 296a.  The use of the auditorium for school plays and graduation ceremonies creates more congestion, leaving "no parking anywhere."  N.T. 244; R.R. 298a.  However, Objector acknowledged that the 2004 Stipulation allowed the School District to use the auditorium on a district-wide basis.  Objector did not believe the parking plan for the Subject Property would work because it contemplated parking spaces three to six blocks away.  Objector argued that in inclement weather, no one would park that far away.

## Trial Court Decision

The trial court made 59 findings of fact.  Relevant to this land use appeal, the trial court made the following findings of fact:

24. There is a three-story structure on the Subject Property that is a 110,000 square foot school building, which includes a gymnasium, an auditorium, classrooms and administrative offices.

---

[5] Jennifer Lopez testified in support of her land use appeal, which concerned the School District's plan to use the elementary center for grades 3 through 8.

7

25. It is anticipated that there will be twenty-three (23) classrooms together with four (4) small group rooms within the structure.

26. The School District currently projects that there will be in excess of 370 students attending school at the Subject Property.

27. The School District currently projects that there will be forty-two (42) full-time staff members and five (5) part-time staff members working in the school building at the Subject Property.

28. The structure on the Subject Property has lot coverage that covers 80% to 90% of the overall property. The balance of the [property] consists of a very small amount of green area inclusive of bushes, minimal parking and a driveway. Due to the series of additions to the original building since 1925, the school building occupies almost the entire lot.

29. On the southside of the Subject Property, along Filbert Avenue, there are approximately thirty (30) angled parking spaces that can be accessed directly from Filbert Avenue.

. . . .

31. There are a small number of additional parking spaces located on the northwest corner of the Subject Property.

. . . .

33. The Subject Property was previously occupied by the Mount Penn High School from the 1920s until 1989, when it was sold to A & C Building and Industrial Maintenance Corporation.

. . . .

35. In November of 2001, the School District entered into an agreement of sale with A & C Building and Industrial Maintenance Corporation to repurchase the Subject Property.

36. The School District has been using the Subject Property as a school for educational purposes since it repurchased the [property] in 2001.

37. The principal use of the Subject Property will be that of a school or educational use.

. . . .

8

41.    The Borough of Mount Penn has requested, and the School District has Agreed, that the use of the gymnasium and auditorium shall be available for all School District functions whatsoever[.]

. . . .

43.    The proposed use has been served in the past and continues to be served by adequate sanitary sewer facilities that are subject to review and approval by all agencies with jurisdiction.

44.    The proposed use has been served in the past and continues to be served by adequate water supply facilities that are subject to review and approval by all agencies with jurisdiction.

45.    The proposed use has been served in the past and continues to be served by adequate utilities that are subject to review and approval by all agencies with jurisdiction.

. . . .

47.    The off-street parking spaces do not conform with the Joint Zoning Ordinance and therefore the School District has requested variances from the parking requirements of the Joint Zoning Ordinance.

48.    In an effort to alleviate and address the parking issues, the School District has proposed to provide a total of one hundred eighty-three (183) parking spaces as follows:

    a.    Thirty-two (32) off-street parking spaces;

    b.    Twelve (12) on street parking spaces;

    c.    Forty (40) parking spaces at the Trinity UCC Parking Lot located near the Subject Property subject to a written agreement between the School District and the Trinity UCC;

    d.    Twenty (20) parking spaces at the Faith Lutheran Church Lot located near the Subject Property subject to an agreement between the School District and the Faith Lutheran Church; and

9

e. Seventy-nine (79) on street parking spaces surrounding the A-Field that is located near the Subject Property.

49. There are unique physical circumstances and conditions at the Subject Property, including the lot size, the building lot coverage, the trapezoidal lot shape, and the downward slopes on the [property], that create an unnecessary hardship that is due to the existing physical circumstances or conditions and not circumstances or conditions generally created by the provisions of the Joint Zoning Ordinance.

50. The only possible way of strictly complying with the parking requirements would be through extensive reconstruction at the Subject Property or building demolition at a very high cost, thereby rendering it an economically infeasible, unnecessary hardship.

. . . .

52. The unnecessary hardship has not been created by the School District.

53. The proposed variances will not alter the essential character of the neighborhood or zoning district in which the Subject Property is located.

54. The proposed variances will not substantially or permanently impair the appropriate use or development of adjacent properties.

55. The proposed variances will not be detrimental to the public welfare.

56. The proposed variances will be the minimum variances that will afford relief to the School District.

57. The proposed variances will represent the least modifications possible to the regulations at issue.

Trial Court Op. at 4-12. Based on these findings, the trial court granted the School District's application for a special exception and parking variances.

In its opinion, the trial court reasoned that the definitions of "school" and "educational uses" in the Zoning Ordinance are "broad and include all grade

10

levels." Trial Court Op. at 21. Thus, a change in the grades was not relevant to the School District's ability to use the Subject Property as a school.

As to the parking variances, the trial court cited this Court's decision in *Mitchell v. Zoning Hearing Board of the Borough of Mount Penn*, 838 A.2d 819 (Pa. Cmwlth. 2003), wherein the Court addressed the hardship issues relating to parking when the School District sought a special exception to use the Subject Property as a primary school. In that case, this Court stated as follows:

> The School District presented the following evidence to support the request for a variance. The subject property was occupied by the former high school for more than sixty years until it was abandoned in 1989. Due to the series of subsequent additions to the original building, the current building occupies almost the entire lot leaving no room for off-street parking. In addition, the subject lot is on a slope dropping approximately twenty feet across its length. Because of such topography and lack of available parking spaces on the lot, the only way to provide off-street parking is to demolish a portion of the building. Demolition of some part of the building, however, will present structural problems to the remaining building. Moreover, demolition of the portion of the building currently occupied by the gymnasium to provide thirty-two parking spaces would cost $800,000, or about 15% of the total costs of renovating the subject property.
>
> Where, as here, the evidence demonstrates that the only possible way of strictly complying with the parking requirement is through extensive reconstruction or demolition of the building at a very high cost rendering it economically infeasible, unnecessary hardship for justifying a dimensional variance is shown. . . .
>
> In addition, the trial court accepted the findings of the Board that the grant of [a] variance from the off-street parking is necessary for a reasonable use of the property, that the relief sought by the School District represents the minimum variance, and that the grant of the variance will neither alter the character of the neighborhood nor be detrimental to the public welfare.

11

> Those findings are supported by the testimony presented by the School District that it is impractical and infeasible to develop the subject property for other purposes, that the proposed use requires [the] least zoning relief and is the highest and best use of the property, that renovation of the dilapidated subject building will actually increase the value of the neighboring properties, and that relocating some students to the proposed school from the existing elementary school located a few blocks away will generally reduce the traffic congestion and parking problems in the area.

*Mitchell*, 838 A.2d at 829-830 (citations omitted). In short, this Court affirmed the variances from the off-street parking requirements for the Subject Property.

The trial court explained that in the 21 years since *Mitchell*, the physical circumstances at the Subject Property have not changed. The Zoning Ordinance requires the Subject Property have 129 off-street parking spaces for use as a high school, which is 85 more spaces than was required when the Subject Property was used as a primary school. The variances were necessary to allow for the reasonable use of the Subject Property. Concluding that the School District demonstrated unnecessary hardship, the trial court granted the parking variances.

Objector appealed the trial court's decision.

## Appeal

On appeal,[6] Objector raises four issues:

1.   Whether the trial court committed an abuse of discretion and/or error of law by granting the [School] District's request for a special exception despite the [School] District's failure to meet

---

[6] "Where the trial court [takes] any additional evidence on the merits, [] it must determine the case *de novo*, making its own findings of fact based on the record made before the board as supplemented by the additional evidence; this Court must then determine on appeal whether the trial court, not the board, committed an error of law or an abuse of discretion." *Mitchell*, 838 A.2d at 825.

12

all of the objective criteria for a special exception in the Zoning Ordinance?

2.      Whether the trial court committed an abuse of discretion and/or error of law by granting the [School] District's request for a special exception and therefore finding that the safety and welfare issues presented by [Objector] did not create a high probability that the proposed use will substantially and negatively affect the health, safety, and welfare of the community?

3.      Whether the trial court committed an abuse of discretion and/or error of law by granting the [School] District's request for parking variances despite the [School] District's failure to present sufficient evidence to establish all of the requirements for the variances under the Zoning Ordinance?

4.      Whether the trial court committed an abuse of discretion and/or error of law by finding that the conditions imposed on the property by the May 11, 2004 stipulation and order no longer apply, despite the [School] District's failure to properly request the change, to present sufficient evidence to establish that changed circumstances have rendered the stipulation and order inappropriate and that there is an absence of injury to the public interest?

Objector Brief at 5-6.

## Analysis

We begin with a review of the applicable legal principles. A special exception is a use permitted by right so long as the specific standards in the zoning ordinance are satisfied. *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006). The applicant for a special exception has the burden of proving that the proposed special exception use satisfies the objective standards in the zoning ordinance. *Greth Development Group, Inc. v. Zoning Hearing Board of Lower Heidelberg Township*, 918 A.2d 181, 186 (Pa. Cmwlth. 2007). Once an applicant has made out a *prima*

13

*facie* case, the burden shifts to any objectors to present evidence that the proposed use has a detrimental effect on the public health, safety, and welfare. *Id*.

The R-4 Zoning District, where the Subject Property is located, allows schools by special exception. The Zoning Ordinance states, in relevant part, as follows:

> Uses by Special Exception: The following principal and accessory uses are permitted by special exception within the R-4 Zoning District, provided that such use complies with the provisions of this Joint Zoning Ordinance:
>
> . . . .
>
> > (10) *Schools and Educational Uses, subject to Section 651 of this Joint Zoning Ordinance*.

ZONING ORDINANCE, §406(D)(10); R.R. 363a (emphasis added). An "educational use" is defined as follows:

> A use having one or more of the following purposes: to educate or instruct individuals in a school setting with instruction directed towards academic, moral, intellectual, physical and vocation instruction. Excepted from this definition are uses devoted to driver training schools, heavy equipment training schools, riding schools, private recreational uses, day-care centers, and other uses that are not considered academic in character.

ZONING ORDINANCE, §202; R.R. 360a. The term "school" is defined as follows:

> A building or group of building[s] intended to provide or facilitate an educational use including pre-schools, nursery schools, kindergartens, elementary schools, secondary schools, technical schools, trade schools, vocational schools, business schools, colleges and/or universities, which are licensed and accredited as an education facility.

ZONING ORDINANCE, §202; R.R. 361a.

The requirements for school and educational uses are set forth in Section 651 of the Zoning Ordinance, which provides, in pertinent part, as follows:

14

(B) The following principal and accessory uses shall be permitted as part of a school or educational use:

. . . .

> (2) *Accessory or subordinate uses for the school or educational use shall be limited to*: administrative offices; cafeterias; concession recreational uses; entertainment uses, child care facilities; religious uses; and other similar uses that are determined appropriate by the municipality with jurisdiction. The cumulative gross floor area for all such accessory uses shall not occupy more than forty (40) percent of the cumulative gross floor area of all uses within the building occupied by the school or educational facility.
>
> . . . .

(D) The following standards and specifications shall be required for schools and educational uses:

. . . .

> (5) All property lines adjacent to existing residential land uses shall be adequately screened and buffered so as to protect the residential neighborhood from inappropriate noise, light and other disturbances.
>
> . . . .
>
> (7) The off-street parking, loading spaces and interior access lanes shall be designed to comply with the provisions specified under Article 8 of this Joint Zoning Ordinance.
>
> . . . .
>
> (9) The applicant shall develop, implement and maintain a working plan for the solid waste disposal, recycling and the clean-up of litter that could be a result of the proposed use.

ZONING ORDINANCE, §§651(B)(2), (D)(5), (D)(7), (D)(9); R.R. 372a-73a.

The Zoning Ordinance's parking provision provides, in pertinent part, as follows:

15

(A) *Off-street parking facilities shall be provided whenever*: a building is constructed or new use established; *the use of an existing building is changed to a use requiring more parking facilities; an existing building is altered so as to increase the amount of parking spaces required*; and/or a residential or non-residential use requires off-street parking as specified by the provisions of this Joint Zoning Ordinance.

(B) Unless otherwise specified by this Joint Zoning Ordinance, each off-street parking space shall have a minimum area of two hundred (200) square feet with the minimum dimensions of ten (10) by twenty (20) feet. In addition, driveways, aisles and maneuvering spaces shall be provided to permit safe and convenient access to and use of the area provided for parking purposes. Proper access from a street, alley or driveway shall be provided.

(C) Off-street parking spaces for residential uses shall be located on the same lot as the use served. Off-street parking spaces for other uses shall be provided for on the same lot as the use being served, or in parking facilities within four hundred (400) feet of the principal uses, except in the case of a shopping center or similar grouping of buildings on a lot, in which case all parking areas shall be provided entirely within the lot lines of the property.

. . . .

(E) Joint parking facilities for two (2) or more uses may be established, provided that the number of spaces provided is not less than the sum of the spaces required for each individual use.

(F) All parking spaces and means of access, other than those relating to a dwelling, shall be adequately illuminated during night hours of use. . . .

ZONING ORDINANCE, §804(A)-(C), (E)-(F); R.R. 377a-78a (emphasis added). The minimum number of parking spaces required for a school or educational use follow:

Nursery School through the 9th Grade: 1 parking space per 10 students plus 1 space per employee plus auditorium requirements.

10th through 12th Grade: 1 parking space per 4 students plus 1 space per employee plus auditorium requirements.

ZONING ORDINANCE, §804(R); R.R. 381a. An auditorium requires "1 parking space per 3 seats, which may be available on chairs, seats, pews, benches or bleachers." *Id*.

For uses that pre-date the adoption of the 2011 Zoning Ordinance, the Zoning Ordinance states as follows:

> Where an existing building or use pre-exists the effective date of this Joint Zoning Ordinance, *the provisions for off-street loading and off-street parking*, as specified within this Article *shall not specifically apply*, *unless the building or use is enlarged* or altered in a manner that increases the demand for off-street loading or off-street parking.

ZONING ORDINANCE, §802(E); R.R. 375a (emphasis added). Where a pre-existing use or building is enlarged, the Zoning Ordinance states:

> *Where an existing building or use is enlarged by* floor area, *number of employees*, number of residential units, seating capacity, bed spaces, service bays, or other provisions specified by this Joint Zoning Ordinance, *the required number of* off-street loading spaces and/or *off-street parking spaces shall be proportionately or incrementally increased* based upon the enlargement of the building or use.

ZONING ORDINANCE, §802(F); R.R. 375a (emphasis added).

Finally, a variance is permitted where the applicant satisfies the relevant criteria that follow:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such condition, and not circumstances or conditions generally created by the provisions of this Joint Zoning Ordinance in the neighborhood or district in which the property is located.

17

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this Joint Zoning Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance as granted by the Zoning Hearing Board is the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

ZONING ORDINANCE, §1106(D). The Zoning Ordinance language for a variance is nearly identical to Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC).[7]

A dimensional variance requests an adjustment of zoning regulations and a use variance requests a use of the property "wholly outside zoning regulations." *Dunn v. Middletown Township Zoning Hearing Board*, 143 A.3d 494, 501 (Pa. Cmwlth. 2016).

## I.  Objective Criteria for Special Exception

In his first issue, Objector argues that the School District did not establish that the proposed use for the Subject Property meets "the specific objective criteria" of the Zoning Ordinance for a special exception. Specifically, Objector contends that the School District did not present evidence on the requirements of Section 651 of the Zoning Ordinance that follow:

---

[7] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1998, P.L. 1329, 53 P.S. §10910.2.

- Section 651(B)(2), which requires a 40% limitation on the gross floor area of accessory or subordinate uses for the proposed use, which are limited to: administrative offices, cafeterias, and other similar uses deemed appropriate.

- Section 651(D)(5), which requires that all property lines adjacent to existing residential land uses be adequately screened and buffered to protect the residential neighborhood from inappropriate noise, light and other disturbances.

- Section 651(D)(9), which requires that the Township develop, implement and maintain a working plan for solid waste disposal, recycling and the clean-up of litter.

- Section 651(E), which requires that, prior to the submission of an application for special exception, that the applicant consult with the Borough about supplemental documentation needed to show that the school use complies with the Borough's provisions related to grading, utility, landscaping, architectural, traffic and/or environmental plans and reports.

- Section 651(D)(7), which requires that off-street parking, loading spaces and interior access lanes comply with Article 8 of the Zoning Ordinance.

Objector Brief at 15-17.

The School District responds that the Subject Property has been functioning as a school and educational use for a long period of time, which constitutes evidence of its compliance with the objective criteria for a special exception, including those that relate to its off-street parking lot. Further, the definition of "schools" in Section 202 of the Zoning Ordinance does not differentiate between grade levels.

The Zoning Ordinance permits schools and educational uses in an R-4 Zoning District by special exception. ZONING ORDINANCE, §406(D)(10); R.R. 363a. An educational use has "one or more of the following purposes: to educate or instruct individuals in a school setting with instruction directed towards academic, moral,

19

intellectual, physical and vocation instruction." ZONING ORDINANCE, §202; R.R. 360a. A school includes "[a] building" which "provide[s] or facilitate[s] an educational use including . . . elementary schools[.]" *Id*.; 361a.

At the hearing, the School District addressed compliance with the objective criteria for a special exception. It established that the administrative office and cafeteria area do not occupy more than 40% of the gross floor area within the building. The Subject Property is currently used as a school, for which it established solid waste, recycling, and litter plans. Because the Subject Property is bordered by three streets and an alleyway and is not adjacent to any residences, the Zoning Ordinance's screening requirements are not applicable. The School District also addressed traffic and on-site parking. Leinbach testified that with the minor variance for distance, the School District satisfied the parking requirements in the Zoning Ordinance. The School District notes that Objector did not present any contrary evidence on the objective criteria for a special exception.

A "school" is defined as "[a] building or group of building[s] intended to provide or facilitate an educational use . . . ." ZONING ORDINANCE, §202; R.R. 361a. Stated otherwise, a school is broadly defined without reference to the age or grade level of the students. Thus, a change in grades assigned to the Subject Property did not trigger the need for a special exception.[8]

We reject Objector's argument that the School District did not satisfy the objective criteria in the Zoning Ordinance for a special exception. In any case, as a matter of law, the School District did not need a special exception to continue its use of the Subject Property as a school for educational use. It has done so since the 1920s, before the enactment of the Zoning Ordinance.

---

[8] At oral argument, the School District's counsel explained that it applied for the special exception to use the Subject Property as a high school at the direction of Mount Penn.

20

## II. Impact on Public Health, Safety and Welfare

In his second issue, Objector argues that traffic, parking, trespassing and littering create a high probability that the proposed use will substantially and negatively affect the community. Objector argues that his personal experience established that the adverse impacts of the school use "already exist and have been happening for decades." Objector Brief at 22.

The School District responds that Objector's concerns are speculative at best. Objector's only evidence consisted of photographs taken during pick-up and drop-off of elementary school children. However, as Leinbach testified, using the Subject Property as a high school alleviates Objector's concern because high school students will walk to school. In contrast, parents do pick-up and drop-offs for elementary school children. Objector himself stated that when the Subject Property reopened as a school in 2004, the parking situation got worse because of parents driving young children to school.

Where an applicant satisfies a zoning ordinance's objective requirements for a special exception, the burden shifts to the objector to show the proposed use will have a detrimental effect on the public health, safety and welfare. *Oasis v. Zoning Hearing Board of South Annville Township*, 94 A.3d 457, 465 (Pa. Cmwlth. 2014). To satisfy this burden, the objector "must show a *high probability* that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a *substantial threat* to the health and safety of the community." *Id*. (quoting *Greaton Properties, Inc. v. Lower Merion Township*, 94 A.2d 1038, 1046 (Pa. Cmwlth. 2002)) (emphasis in original). "Testimony based on specific past experiences can satisfy this burden, but bald assertions, personal opinions and speculation will not." *Oasis*, 94 A.3d at 465. As to traffic, an objector

must show "'a high degree of probability' that the traffic increase would pose a substantial threat to the health and safety of the community." *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 914 (Pa. Cmwlth. 1980) (quoting *Appeal of O'Hara*, 131 A.2d 587, 596 (Pa. 1957)).

Objector testified about instances of "unruly children" and described staff parking "all over the street." N.T. 240, 242; R.R. 294a, 296a. This falls short of a "high probability" that the proposed use will generate "abnormal traffic" in excess of that expected for a use permitted by special exception. *Accelerated Enterprises, Inc. v. The Hazle Township Zoning Hearing Board*, 773 A.2d 824, 827 (Pa. Cmwlth. 2001). Objector did not present a traffic study, and the School District's study concluded that relocating high school students to the Subject Property will alleviate traffic and safety issues. In 2022-2023, the School District issued only 12 parking permits for student drivers, which corroborates its projection that high school students are more likely to walk to school. To the extent there are any parking violations, it is incumbent upon the Borough's zoning officer or the police department to enforce Mount Penn's Zoning Ordinance.

We reject Objector's second issue on appeal. The fact that traffic may increase is not grounds for denying the School District's application for a special exception. Objector failed to establish that the new grades assigned to the Subject Property will generate adverse impacts not normally associated with a school use.

### III. Parking Variances

In his third issue, Objector argues that the School District failed to meet its burden for a variance by showing an unnecessary hardship. Objector contends that the flood, which rendered the junior/senior high school unusable, was not a hardship. Granting a variance will set a dangerous precedent because it will allow

22

municipalities and school districts to engage in "work-arounds." Objector Brief at 24. Further, Objector contends that the School District can explore other possibilities while it uses the Subject Property as an elementary school.

The School District responds that it demonstrated an unnecessary hardship. To comply with the parking requirements for on-site, off-street spaces, the School District would have to demolish part of the existing building to create a new parking lot.

A variance is a departure from the exact provisions of a zoning ordinance. *South Broad Street Neighborhood Association v. Zoning Board of Adjustment*, 208 A.3d 539, 547 (Pa. Cmwlth. 2019). A zoning board may grant a variance when the following criteria are met:

> (1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Dunn*, 143 A.3d at 500 (quoting *Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014)). The applicant bears the burden of proof. *Marshall v. City of Philadelphia*, 97 A.3d 323, 329 (Pa. 2014).

At issue is Section 804(R), (T) of the Zoning Ordinance. Section 804(R) states:

> The number of off-street parking spaces to be provided for each use shall be sufficient to accommodate the use and occupants, full-time employees, visitors and customer parking. The off-street parking spaces required shall be further specified by

23

Matrix Chart 11 and shall be located exclusive of any public right-of-way or other specified use.

ZONING ORDINANCE, §804(R); R.R. 379a. The off-street parking requirements for schools in the Supplemental Matrix Chart are:

| Auditorium, Conference Center, and Public Meeting/Assemblage Facilities | 1 parking space per 3 seats, which may be available on chairs, seats, pews, benches or bleachers |
|---|---|
| School or Education Use: Nursery School through the 9th Grade. | 1 parking space per 10 students plus 1 space per employee plus auditorium requirements |
| School or Education Use: 10th through 12th Grade; Higher Learning Facility | 1 parking space per 4 students plus 1 space per employee plus auditorium requirements |

*Id.*; R.R. 381a. Section 804(T) of the Zoning Ordinance states:

The municipality with jurisdiction may permit a reduction for the total number of off-street parking spaces as part of the subdivision or land development plan. Where a reduction in the total number of off-street parking spaces is considered, the applicant shall provide documentation to support that the use does not warrant the total number of spaces required. The municipality with jurisdiction may also consider the availability of on-street parking within five hundred (500)[9] of the development. Unless otherwise permitted as part of the design requirements of the Carsonia Avenue Overlay District or the Perkiomen Avenue Overlay District, the maximum permitted reduction shall not exceed thirty (30) percent of the required total.

ZONING ORDINANCE, §804(T); R.R. 381a.

---

[9] There appears to be a word missing after "(500)[,]" which the Township should consider correcting. We interpolate the word "feet" after "(500)."

The School District projects that 370 students will attend classes at the Subject Property. Students in grades 10 through 12 are expected to total 295; students in grade 9 will total 75. The Zoning Ordinance requires 1 parking space for every 4 students in grades 10 through 12, *i.e.*, 74 parking spaces. The Zoning Ordinance requires 1 space for every 10 students in grade 9, *i.e.*, 8 parking spaces. Additionally, the Zoning Ordinance requires 1 space for every employee, or 47 off-street parking spaces. In sum, the Subject Property needs at least 129 off-street parking spaces, which is approximately 80 more than when the Subject Property was used as an elementary school.

The School District has secured 183 parking spaces. The Subject Property has 44 parking spaces, of which 32 are off-street, and 12 are on-street. The School District has agreements with Trinity UCC to use 40 parking spaces on their lot and Faith Lutheran Church to use 20 parking spaces on its lot.[10] Additionally, the School District can use the 79 on-street parking spaces surrounding the A-Field. A variance is needed because 92 of the parking spaces are off-street, and the spaces at the A-Field are more than 400 feet from the Subject Property and are on the street. Only with these variances can the School District meet the parking requirements for a special exception.

The School District established that the Subject Property operated as a school since the 1920s, with one interruption from 1989 to 2001. The Subject Property is 1.72 acres, irregularly shaped, and steeply sloped. The existing building covers 80-90% of the land, and the balance of the property consists of bushes, parking and a driveway. These physical limitations make strict conformity with the Zoning Ordinance impossible. The School District does not own any other property,

---

[10] The parking spaces at these lots are located within 400 feet of the Subject Property and are off-street.

and it has rented every possible parking space. The School District did not create the hardship.

Based on this evidence, the trial court did not err in determining that the School District established that the parking variances were the least modification necessary to allow reasonable use of the Subject Property as a school, and that it met its burden for a variance under Section 1106 of the Zoning Ordinance.

## IV.  2004 Stipulation

In his final issue, Objector argues that the School District is bound by the conditions set forth in the 2004 Stipulation, and it had to be modified in order to be granted a special exception.

The 2004 Stipulation allowed the School District to use the auditorium and gymnasium for activities directly related to the academic, educational and/or co-curricular activities of the School District. R.R. 429a. In 2024, Mount Penn requested, and the School District agreed, that the following conditions be attached to the use of the Subject Property:

1.  The use of the gymnasium and the auditorium shall be available for all School District functions whatsoever and in addition thereto, to such Borough of [Mount] Penn and Lower Alsace Township community activities in accordance with School District practices and policies.

2.  If the School District provides busing for all of its 7th through 12th grade students (excluding special education students) at any time in the future, the Borough may request a traffic study be performed to assess the impact of the busing.

R.R. 465a-66a. The Zoning Board incorporated those conditions into its grant of the School District's special exception application to use the Subject Property for a high school. Zoning Board Adjudication, Conclusions of Law ¶¶9-10; R.R. 30a. The trial court found as follows:

26

41. The Borough of Mount Penn has requested, and the School District has Agreed, that the use of the gymnasium and auditorium shall be available for all School District functions whatsoever and, in addition thereto, to such Borough of Mount Penn and Lower Alsace Township community activities in accordance with School District practices and policies.

Trial Court Op. at 9, Finding of Fact No. 41. However, the trial court did not make any finding on the condition related to a traffic study.

Objector argues that using the Subject Property for grades 7 through 12 did not conform to the 2004 Stipulation. Objector's contention is opaque. First, the School District does not provide busing for high school students. Second, the traffic study condition set forth in the 2004 Stipulation creates a right only in Mount Penn, not Objector. Third, there is no basis to believe that either the special exception or the variances depart from the 2004 Stipulation.

However, even accepting Objector's premise, conditions attached to a prior permit may be modified or removed. In *Ford v. Zoning Hearing Board of Caernarvon Township*, 616 A.2d 1089 (Pa. Cmwlth. 1992), the landowner received a variance from the frontage standard that enabled the landowner to subdivide his property into three lots. The zoning board's condition required the landowner to record restrictions for the deeds to preclude further subdivision. Thereafter, the landowner sought relief from this condition. On appeal, this Court explained that "a landowner is not necessarily bound by the terms of a variance a zoning hearing board had granted earlier." *Id*. at 1091.

> Robert Ryan, in his treatise *Pennsylvania Zoning and Law Practice,* §9.4.20, suggests that the "unnecessary hardship" standard that a landowner must establish in seeking to obtain relief from the terms of the ordinance does not apply in situations in which a landowner requests relief from a condition imposed by a zoning hearing board. Mr. Ryan notes that board-imposed conditions are not provisions of the zoning ordinance,

27

> but rather condition[s] designed by the zoning board to protect the public interest in the particular case, and nothing more. Accordingly, the better approach is to require only that the applicant proves that the condition no longer promotes the public interest. Ryan, at 105, vol. 2.

*Ford*, 616 A.2d 1091-92. In short, a landowner may seek a modification of a permit condition where circumstances have changed and it no longer serves the public interest.

Here, the School District demonstrated a change in condition and the absence of injury to the public interest. This assumes that the grant of the special exception and variances eviscerated the 2004 Stipulation, which cannot be inferred from the trial court's order.

## Conclusion

We conclude, and hold, that the School District was not required to seek a special exception to assign grades 9 through 12 to the Subject Property, beginning in the 2024-2025 school year. Even so, the School District satisfied the requirements in the Zoning Ordinance for a special exception. Further, we conclude that the School District established the requirements for the parking variances. Accordingly, we affirm the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

28

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Saltzman,             :
         Appellant      :
                      :
      v.              :      No. 1252 C.D. 2024
                      :
Zoning Hearing Board of the :
Borough of Mount Penn and  :
Antietam School District    :

# **O R D E R**

AND NOW, this 20th day of November, 2025, the order of the Court of Common Pleas of Berks County, dated August 14, 2024, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita